Karen Luong (SBN 246809)
karen.luong@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand, Suite 2850
Los Angeles, CA 90071
213.337.6550 Telephone
213.337.6551 Fax

Dustin L. Taylor (*pro hac vice* forthcoming)
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
303.749.7200 Telephone
303.749.7272 Facsimile

***Attorneys for Defendant***
***G6 Hospitality LLC***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CYNTHIA SYNDER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

G6 HOSPITALITY LLC,

Defendant.

Case No: 5:24-cv-02423-AH-SHK

**DEFENDANT G6 HOSPITALITY'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

**Date/Time: April 2, 2025 1:30pm**
**Judge: Hon. Anne Hwang**

Complaint Served: January 7, 2025
Trail Date: Not Set

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. Motel 6 Provides a Public Website. ..... 2

B. Plaintiff Agreed to the Motel 6 Privacy Policy and Terms of Use—Including the Cass Action Waiver, Arbitration Agreement, and Exclusive Jurisdiction in Texas—When She Created a "Motel 6" Account. ..... 3

C. Users Are Required to Affirmatively Consent to Motel 6's Policies—Including the Privacy Policy—When Booking a Room. ..... 5

D. The Meta Pixel Allegedly Caused Plaintiff's Computer to Send Information Directly to Meta. ..... 7

III. This Court is Not the Proper Venue for the Parties' Dispute. ..... 8

A. Plaintiff Agreed to the Terms of Use. ..... 8

B. Plaintiff Agreed to Arbitrate the Claims, to Submit to the Exclusive Jurisdiction in Texas for Any Other Claims, and to Waive Her Right to Jury Trial. ..... 10

1. Plaintiff's claims should be sent to arbitration. ..... 10

2. If the Court finds Plaintiff's claims are not subject to the arbitration agreement, the Court should strike the jury and class action provisions and transfer the claims to Texas. ..... 12

IV. Plaintiff's claims must be dismised under rule 12(b)(6). ..... 14

A. Plaintiff's Wiretapping Claim Must Be Dismissed ..... 14

1. Plaintiff consented to use of the Meta Pixel on Motel 6's Website. ..... 16

2. Plaintiff did not allege the "content" of any communication was shared with any third party. ..... 17

3. Plaintiff failed to allege any information was "intercepted" while in "transit." ..... 19

B. Plaintiff's Invasion of Privacy Claim Must Be Dismissed. ..... 21

C. Plaintiff's Claim Must Be Dismissed Because Plaintiff Lacks Article III Standing. ..... 23

D. Plaintiff's Complaint Should Be Dismissed with Prejudice. ..... 24

V. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) ........ 5

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........ 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ........ 13

*Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844 (N.D. Cal. 2015) ........ 19

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........ 8, 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........ 11

*County of Orange v. United States District Court*, 784 F.3d 520 (9th Cir. 2015) ........ 13

*Gardner v. Astrue*, No. 10-cv-011812010 WL 6762250 (S.D. Cal. Dec. 1, 2010) ........ 5

*Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318 (S.D. Fla. 2021) ........ 18, 19

*Graham v. Noom*, 533 F.Supp.3d 823 (N.D. Cal. 2021) ........ 17, 23

*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 15

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) ........ 21

*In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051 (N.D. Cal. 2015) ........ 19

*In re Facebook Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ........ 20

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204 (C.D. Cal. 2017) ........ 19, 22

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 17, 19

*James v. Walt Disney Co.*, No. 23-cv-02500, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ........ 20, 21

*Jones v. Tonal Sys., Inc.*, No. 23-cv-01205, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ........ 17, 18, 19

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 19
*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ........ 8, 9, 10
*Leonel v. Am. Airlines, Inc.*,
400 F.3d 702 (9th Cir. 2005) ........ 21
*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 15
*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 18
*Nagrampa v. MailCoups*,
469 F.3d 1257 (9th Cir. 2006) ........ 10
*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 8
*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ........ 5
*Patel v. City of Los Angeles*,
738 F.3d 1058 (9th Cir. 2013) ........ 22
*Rainey v. A Place for Rover, Inc.*,
No. 2:22-CV-00403-RGK-E , 2022 WL 16942849 (C.D. Cal. July 18, 2022) 9, 10
*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ........ 24
*Reichman v. Poshmark*, Inc.,
267 F. Supp. 3d 1278 (S.D. Cal. 2017) ........ 23
*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 20
*Rodriguez v Autotrader.com, Inc.*,
No. 2:24-cv-08735, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ........ 16
*Rogers v. Lyft, Inc.*,
452 F. Supp. 3d 904 (N.D. Cal. 2020) ........ 12
*Rueda Vidal v. Bolton*,
822 F. App'x 643 (9th Cir. 2020) ........ 5
*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) ........ 18, 22
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........ 24
*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 17
*Specht v. Netscape Comm'n Corp.*,
306 F.3d 17 (2d Cir. 2002) ........ 8
*Spokeo, Inc. v. Robins*,

578 U.S. 330 (2016)....23
*Spring Awakening, LLC v. Certain Underwriters at Lloyd's*, No. CV-22-2273, 2022 WL 19569523 (C.D. Cal. June 10, 2022) ....13
*Tavernetti v. Superior Ct.*, 22 Cal. 3d 187 (1978)....15
*U.S. Sec. Holdings, Inc. v. Andrews*, No. CV212263DSFMRWX, 2021 WL 6104394 (C.D. Cal. Sept. 15, 2021)....13
*Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....23
*Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073 (C.D. Cal. 2021)....18
*Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ....18

**Statutes**

9 U.S.C. § 2....11
Cal. Civil Code § 53.5 ....22, 23
Cal. Civil Code § 53.5(c)....22
Cal. Const. Art. I, § 1....21
Cal. Penal Code § 631 ....14
Cal. Penal Code § 631(a)....14, 15, 17, 18, 19, 21

**Rules**

Fed. R. of Civ. Proc. § 12(b)(6)....14

# I. INTRODUCTION

Since at least 2021 Plaintiff has booked "several reservations" through the website www.motel6.com (the "Website"), which is operated by Defendant G6 Hospitality LLC's ("Motel 6"). This lawsuit, however, is not about those stays. Plaintiff does not allege anything occurred during those stays or even that she had a negative experience at Motel 6's properties. Indeed, she has stayed "several" times since her first stay. Plaintiff's complaint instead relates to Motel 6's alleged disclosure via the "Meta Pixel" (the "Pixel") of limited information Motel 6 obtained when Plaintiff accessed the Website to inquire whether Motel 6 had a room available. Plaintiff alleges her privacy rights were violated not when Motel 6 shared her credit card information or any details about Plaintiff herself, but rather that Plaintiff had submitted a request to determine whether Motel 6 had a room available in a general location (e.g., San Francisco), in a date range (e.g., Feb. 3 through Feb. 5), that could accommodate a maximum number of adult guests (e.g., 3 adults). Plaintiff does not allege she suffered any actual harm from this limited information being shared with Meta. She does not allege she was shown additional advertisements or that somehow Meta knowing Plaintiff was interested in a room even inconvenienced Plaintiff in any way. Plaintiff instead alleges the mere use of an industry-standard advertising tool violates her constitutional right to privacy and wiretapping laws first passed in 1967.

This is not the proper place to hear Plaintiff's claims. Plaintiff fails to inform the Court she not only booked "several reservations" through the Website over the previous years but that she also made an account with Motel 6 and, in doing so, agreed to Motel 6's Terms of Use and Privacy Policy. When she agreed to those Terms, Plaintiff agreed: (1) to submit her disputes to arbitration; (2) to the exclusive jurisdiction of the Northern District of Texas for any claim not subject to arbitration; and (3) that she waived her right to participate in a class action litigation and to a jury trial. Plaintiff also agreed to Motel 6's use of cookies in the Terms, which incorporated by reference the Privacy Policy wherein Plaintiff was also informed of

and consented to the very behavior she now alleges is unlawful. This Court should therefore transfer this matter to the Northern District of Texas, where it can be stayed pending arbitration of the Plaintiff's individual claim. If the Court finds Plaintiff's claims are not subject to the arbitration clause, it should transfer this case to the Northern District of Texas where Plaintiff can pursue her claims individually.

Regardless, Plaintiff's complaint fails to state a claim under Rule 12(b)(6). Consent is an absolute defense to a wiretapping claim. Moreover, as explained in more detail below, the information Plaintiff alleges was shared with Meta is merely behavior and record information; not the "content" of any communication protected by wiretapping laws. And Plaintiff not only fails to allege any message was intercepted while "in transit," but in fact alleges two separate messages were sent from Plaintiff's browser. Thus no interception occurred. Finally, Plaintiff cannot state a claim for violation of her constitutional right to privacy because she did not have a reasonable expectation of privacy over the information she alleges her browser shared with Meta. Motel 6 therefore requests in the alternative that this Court dismiss Plaintiff's claims with prejudice under Rule 12(b)(6).

## II. STATEMENT OF FACTS

### A. Motel 6 Provides a Public Website.

Motel 6 is an economy motel and lodging chain with over 1,400 locations across Canada and the United States. ECF No. 1, ¶ 24. Prospective guests can book a stay by visiting the website, using Motel 6's mobile application, or by other means such as calling to book. *Id.*, ¶¶ 25–26. When a user visits Motel 6's website at www.motel6.com (the "Website"), the user can select from various preformatted options, including the destination (city, airport, or attraction) near which the user would like to stay, the dates the user would like to stay, the number of guests (adults and children) staying in the room, and whether the user has a special rate:

//

//







*Id.* at ¶¶ 2, 26.

After selecting their desired property, guests can enter their name, email address, phone number, address, and payment information to checkout:







*Id.* at ¶ 27 (Figures 3–4).

### B. Plaintiff Agreed to the Motel 6 Privacy Policy and Terms of Use—Including the Cass Action Waiver, Arbitration Agreement, and Exclusive Jurisdiction in Texas—When She Created a "Motel 6" Account.

When entering their information, guests are also prompted to "log in" or, if they have not yet created an account, to create a "My6 account." *Id.* Plaintiff created an

account at least as of the time she made the motel booking referenced in the complaint. Declaration of Anurag Pareek ("Pareek Decl.") at ¶ 6. Plaintiff has made at least two bookings through this account, including the August booking at a Westminster, California location referenced in the complaint. *Id.* at ¶ 9.

When creating an account, users such as Plaintiff agree to the My6 Terms of Use and Privacy Policy":




*Id.* at ¶ 4 (red box added).

The current Terms of Use have been in effect since January 4, 2022. Pareek Decl., ¶ 8; *see also* Ex. A to Pareek Decl. at 1[1]. The Terms govern Plaintiff's use of the Motel 6 "websites, mobile applications, tool, utilities, and other formats containing a link to this Agreement." Ex. A at 1. The Terms incorporate the Privacy Policy in its entirety. *Id.*

The Terms also disclose "The Site users various types of cookies to provide certain functionality on the Site" and directs users to Motel 6's Privacy Policy (in blue and underlined to indicate a hyperlink). *Id.*

Users who create an account and agree to the Terms, including Plaintiff, agree

---

[1] Exhibits to the Pareek Decl. are hereinafter identified as "Ex. __".

to waive their right to participate in a class action litigation or class-wide arbitration:

> **CLASS ACTION, COLLECTIVE ACTION, REPRESENTATIVE ACTION, AND CLASS-WIDE ARBITRATION WAIVERS**
> YOU AND COMPANY AGREE THAT NEITHER PARTY MAY FILE OR COMMENCE A CLASS ACTION LAWSUIT, COLLECTIVE ACTION LAWSUIT, REPRESENTATIVE ACTION (WHEREBY A PARTY FILES OR COMMENCES A LAWSUIT IN A REPRESENTATIVE CAPACITY ON YOUR OR COMPANY'S BEHALF), OR CLASS-WIDE ARBITRATION AGAINST THE OTHER PARTY, OR PARTICIPATE IN ANY SUCH LAWSUIT, ACTION OR ARBITRATION AGAINST THE OTHER PARTY. YOU AND COMPANY SPECIFICALLY WAIVE ANY RIGHT EITHER MAY HAVE OR HAVE HAD TO FILE OR COMMENCE A CLASS ACTION LAWSUIT, COLLECTIVE ACTION LAWSUIT, REPRESENTATIVE ACTION, OR CLASS-WIDE ARBITRATION, OR PARTICIPATE IN ANY SUCH LAWSUIT, ACTION OR ARBITRATION AGAINST THE OTHER PARTY.

Ex. A at 3

Plaintiff and other users also agree to arbitrate "any dispute arising out of or related to this agreement or materials." Ex. A at 3–4. Plaintiff also agreed that if the dispute is not covered by the terms of the arbitration provision, the exclusive jurisdiction would be in the Northern District of Texas or, if there is no federal jurisdiction, in the State of Texas Civil District Court for the County of Dallas. *Id.*

### C. Users Are Required to Affirmatively Consent to Motel 6's Policies—Including the Privacy Policy—When Booking a Room.

As shown above, a user, including Plaintiff, is required to agree to the "rate and room policies of the reservation." ECF No. 1 at ¶ 27 (Fig. 3). Figure 3 in Plaintiff's complaint references the "rate and room policies" such that Plaintiff had notice of the policies, and Plaintiff necessarily relies on those policies when she claims she did not consent to the alleged disclosure.[2]

The Website conspicuously provides the "rate and room policies" under the "Confirm Booking" button. Pareek Decl., ¶¶ 10–13. The "Cancellation Policy",

---

[2] "Courts may consider documents that are crucial to the plaintiff's claims but are not explicitly incorporated in the complaint. . . . These rules prevent plaintiffs from surviving Rule 12(b)(6) motions to dismiss legally deficient claims by intentionally omitting from their complaints references to documents on which they rely." *Gardner v. Astrue*, No. 10-cv-01181, 2010 WL 6762250, at *3 (S.D. Cal. Dec. 1, 2010), report and recommendation adopted, 2011 WL 2175605 (S.D. Cal. June 2, 2011); *see also Rueda Vidal v. Bolton*, 822 F. App'x 643, 644 (9th Cir. 2020) ("On a motion to dismiss, a court may take judicial notice of 'documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint.'") (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006)).

"Motel Policy," and "Special Rate Notice – Valid ID" are provided verbatim underneath the "continue" button. *Id.* at ¶ 12. Links to the "Motel 6 Privacy Policy," "Motel 6 Reservation Policy," "COVID-19" notice, and "Guest Disclosure Notice" are also provided and users are instructed to "PLEASE READ" in bold and all capital letters. *Id.* at ¶ 13. The links to the aforementioned policies, including the "View the Motel 6 Privacy Policy" link, are then presented in a font larger than the text prior to the links. *Id.*

The Motel 6 privacy policy discloses the alleged data collection. Under the "Personal Data We Collect" section of its privacy policy, Motel 6 discloses it collects from users their name, email address, telephone number, physical address, and credit card information when a user books a hotel room, and other personal data when a user uses the Website through cookies and other tracking technologies. Ex. B. The privacy policy then discloses that Motel 6 may share collected personal data with "vendors who perform business, data, or Site-related services on our behalf (e.g., reservation processing providers, guest services, information technology providers, **marketing providers**)." *Id.* (emphasized).

Further, under the "Notice to California Residents" section, the privacy policy states Motel 6 collects online identifiers (name, postal address, online identifier, Internet Protocol address, email address, or other similar identifiers); commercial information (records of purchasing or consuming histories or tendencies, or other commercial information); and Internet or other electronic network activity information (browsing history; search history; and information regarding consumer's interaction with the website, application or advertisement). *Id.* The Privacy Policy also discloses Motel 6 collects this information for the purpose of "providing advertising and marketing services." *Id.*

The privacy policy additionally informs users Motel 6 discloses the above collected personal information to marketing providers, and sells or shares unique personal identifiers (e.g. device identifiers; cookies, pixel tags, mobile ad identifiers,

or other forms of persistent or probabilistic identifiers that can be used to identify a particular consumer or device) to marketing providers. *Id.* Users, including Plaintiff, consent to this collection when they book a reservation

### D. The Meta Pixel Allegedly Caused Plaintiff's Computer to Send Information Directly to Meta.

Third-Party and non-defendant Meta Platforms Inc. ("Meta") offers several tools for website owners and everyday businesses. ECF No. 1, ¶¶ 28–49. The only one Plaintiffs allege is used by Motel 6 is the "Meta Tracking Pixel" (the "Pixel"). *Id.* at ¶ 36. "When a user accesses a website hosting the Meta Tracking Pixel, **Meta's software** surreptitiously directs the user's browser to simultaneously **send a separate message** to Meta's servers." *Id.* (emphasized). This second transmission "contains the original GET request sent to the host website, along with additional data the Pixel is configured to collect. This transmission is initiated **by Meta** code and concurrent with the communications with the host website." *Id.* (emphasized).

The complaint provides an "example" but does not allege Plaintiff performed these steps. *Id.* at ¶ 37. In this example, an identified user enters the details of their prospective trip: the location, dates, and number of adults in the party. *Id.* The individual's browser sends a GET request to Motel 6's server requesting the server load a particular webpage on the individual's browser. *Id.* Meta's code then instructs the individual's browser to send a duplicate of the response the browser sent to Motel 6 to Meta "alongside additional information" that was not sent to Motel 6. *Id.* The complaint includes a screenshot of the information from Meta; not Motel 6. *Id.* (Figure 5) (identifying URL beginning with "facebook.com").

Plaintiff also alleges Meta causes a user's browser to send additional cookies to Meta. *Id.* at ¶¶ 53–56. As with the example above, the complaint does not allege this occurred with Plaintiff and in fact presents various scenarios depending on whether the user has a Facebook account and is logged in, has a Facebook account but is not logged in, or does not have a Facebook account. *Id.* Specifically, a "**user**

who accessed the Website while logged into Facebook **transmitted** . . . a 'c_user cookie' to Facebook . . . ." *Id.* at ¶ 53 (emphasized). If the user recently logged out of the account, "Facebook compelled the visitor's browser to send a smaller set of cookies," such as the "fr cookie." *Id.* at ¶¶ 54, 55. If the user did not have a Facebook account, "an even smaller set of cookies was transmitted." *Id.* at ¶ 56.

## III. THIS COURT IS NOT THE PROPER VENUE FOR THE PARTIES' DISPUTE.

### A. Plaintiff Agreed to the Terms of Use.

Plaintiff and Motel 6 entered into an agreement when Plaintiff agreed to the Terms of Use when Plaintiff created her Motel 6 account. To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). Under California law, "[p]arties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *Specht v. Netscape Comm'n Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)). The "elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 855–56.

The Ninth Circuit has set forth three general principals courts consider when determining whether "'sign-up screens' sufficiently provide notice of assent to terms and conditions." *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1069–70 (C.D. Cal. 2023).

> First, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Specifically, the font and formatting of that notice must not be "so small that it is barely legible to the naked eye.". Second,

> "while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent ... [c]onsumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'". Third, "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."

*Id.* (citing *Berman*, 30 F.4th at 856–858).

The Motel 6 sign-up screen meets the *Berman* requirements. The notice is displayed in a similar font size and format as the other text on the sign-up screen and is far from being "so small it is barely legible to the naked eye." *Id.* The terms are provided via hyperlink, which is in a conspicuous blue font over a white background. *Rainey v. A Place for Rover, Inc.*, No. 2:22-CV-00403-RGK-E, 2022 WL 16942849, at *2 (C.D. Cal. July 18, 2022) (finding contract formed where "[t]he Terms are hyperlinked in blue text and stand out against the rest of the white page."). Users are also told the legal significance of the action: by signing up users agree to the My6 Terms of Use and Privacy Policy. *Lee*, 683 F. Supp. 3d at 1070.

Indeed, the Motel 6 sign-up screen by which Plaintiff agreed to the Terms of Use is very similar to the sign-up screen Central District of California courts have found sufficiently provided notice of assent:

//

//

//

//

<table>
<tr>
<td>
</td>
<td>
</td>
<td>
</td>
</tr>
<tr>
<td>Motel 6 Sign-Up</td>
<td>Rainey, 2022 WL 16942849</td>
<td>Lee, 687 F.Supp.3d at 1067</td>
</tr>
</table>

Motel 6 has therefore shown Plaintiff agreed to the Terms of Use and Privacy Policy when she created her My6 account.

**B. Plaintiff Agreed to Arbitrate the Claims, to Submit to the Exclusive Jurisdiction in Texas for Any Other Claims, and to Waive Her Right to Jury Trial.**

Because Plaintiff agreed to the Motel 6 Terms of Use, Plaintiff should be required to comply with the specific provisions to which she agreed. Specifically, Plaintiff should be required to arbitrate the claims she asserted in this complaint because the claims arise out of or are related to the parties' agreement. If the court finds Plaintiff's claims are not subject to the arbitration agreement, Plaintiff should be required to comply with its agreement that any action "that is not covered by the Terms of the arbitration provision . . . shall be filed only in the Northern District of Texas" and proceed on an individual (non-class) basis where Plaintiff has waived her right to trial by jury.

1. Plaintiff's claims should be sent to arbitration.

"The arbitrability of a particular dispute is a threshold issue to be decided by the courts." *Nagrampa v. MailCoups*, 469 F.3d 1257, 1268 (9th Cir. 2006). Under the

FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

In deciding whether a dispute is arbitrable, a court must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As established in Section III(B) above, Plaintiff entered into a contract with Motel 6 via the Terms of Use. Thus, the court need only determine whether the scope of the arbitration agreement includes the claims Plaintiff asserted in this complaint.

It does. Under the Terms both parties agreed to arbitrate "Except with respect to any claim or dispute involving the ownership, validity, or use of any company's patents, trademarks or service marks . . . any dispute arising out of or related to this Agreement or Materials." Ex. A at 3–4. The Terms disclose the use of cookies on the Website and refer Plaintiff to the Privacy Policy. *Id.* at 1. Plaintiff alleges she was unaware of the cookies or the Privacy Policy in general and did not consent to their use. The parties' dispute therefore arises out of or is related to the Agreement. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).

//

//

//

2. <u>If the Court finds Plaintiff's claims are not subject to the arbitration agreement, the Court should strike the jury and class action provisions and transfer the claims to Texas.</u>

If the Court nevertheless finds the Plaintiff's claims are outside the arbitration agreement, the Court should strike the jury and class action provisions of Plaintiff's complaint and transfer the claims to the Northern District of Texas.

Plaintiff and Motel 6 agreed:

> Neither Party may file or commence a class action lawsuit, collective action lawsuit, representative action (whereby a party files or commences a lawsuit in a representative capacity on your or Company's behalf) or class-wide arbitration against the other party, or participate in any such lawsuit, action or arbitration against the other Party. You and Company specifically waive any right either may have or have had to file or commence a class action lawsuit, collective action lawsuit, representative action, or class-wide arbitration, or participate in any such lawsuit, action, or arbitration against the other Party.

Ex. A at 3. Plaintiff's class allegations (paragraphs 65–73) therefore must be struck and Plaintiff held to their agreed-obligation to not serve as a representative of any class. *Rogers v. Lyft, Inc*., 452 F. Supp. 3d 904, 918 (N.D. Cal. 2020), aff'd, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022) (striking class allegations "because the plaintiffs waived the right to represent a class in any forum.")

Plaintiff's request for a jury trial should also be dismissed. ECF No. 1 at p.25. When Plaintiff agreed to the Terms, Plaintiff and Motel 6 both waived "any right you may now have or hereafter possess to a trial by jury." Ex. A at 3. The parties also agreed under the section entitled "Governing Law" that "[t]his Agreement will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any principles of conflicts of law." *Id*. at 4. Where, as here, the underlying agreement includes a choice of law provision that does not identify

California law as controlling, California's prohibition against pre-dispute jury waivers does not apply. *U.S. Sec. Holdings, Inc. v. Andrews*, No. CV212263DSFMRWX, 2021 WL 6104394, at *4 (C.D. Cal. Sept. 15, 2021) (distinguishing *County of Orange v. United States District Court*, 784 F.3d 520, 532 (9th Cir. 2015) because the parties' contract in that case was governed by California law).

Finally, Plaintiff's remaining claims must be transferred to the Northern District of Texas. In agreeing to the Terms, Plaintiff agreed "the exclusive jurisdiction for . . . any action between you and Company that is not covered by the terms of the arbitration provision in this Agreement, shall be filed only in the Northern District of Texas or, if there is no federal jurisdiction over the action, in the State of Texas Civil District Court for the County of Dallas." Ex. A at 4; *see also id.* at 4 ("Governing Law"). Plaintiff further consented and submitted to the personal jurisdiction of such courts for the purposes of litigating any such claim with Motel 6. *Id.*

"In cases such as this, the Supreme Court has clearly stated that "[w]hen the parties [to a contract] have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Spring Awakening, LLC v. Certain Underwriters at Lloyd's*, No. CV-22-2273, 2022 WL 19569523, at *5 (C.D. Cal. June 10, 2022) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013)). A "district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Const. Co.*, 571 U.S. at 64. This is not such an "unusual case" and the Court should require Plaintiff to comply with her agreement and transfer any remaining claims to the Northern District of Texas.

//

//

## IV. PLAINTIFF'S CLAIMS MUST BE DISMISED UNDER RULE 12(B)(6).

If the Court determines Plaintiff did not enter into a contract and agree to the Terms of Use, then the Court should dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiff asserts two counts: (1) Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631; and (2) Invasion of Privacy Under California's Constitution. Both claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has not allege a violation of either section, Plaintiff has also failed to establish a concrete injury required to establish Article III standing.

### A. Plaintiff's Wiretapping Claim Must Be Dismissed

Plaintiff alleges Motel 6 violated Section 631(a), which states in part:

> Any person who, [1] by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500) . . . .

Cal. Penal Code § 631(a) (West) (brackets added to identify separate clauses); *see also* ECF No. 1, ¶ 76. "California courts interpret section 631(a) as several different clauses covering "three distinct and mutually independent patterns of conduct." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1013 (C.D. Cal. 2023) (quoting *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978)). "[I]n addition to these three clauses, [S]ection 631 also contains an aiding and abetting provision, which imposes liability on anyone who 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Id.* at 1013–14.

Plaintiff here alleges only that Motel 6 violated the fourth clause of Section 631(a) by "aiding and permitting third parties (i.e., Meta) to receive its guests' online communications through the Website without their consent." ECF No. 1, ¶ 83; *id.* at ¶ 79. To establish Motel 6 violated the fourth clause, however, Plaintiff must first establish the third party (i.e., Meta) violated one of the preceding three clauses of Section 631(a). Plaintiff fails to do so.

Courts have found the first clause does not apply to "any eavesdropping that is alleged to have occurred as to communications over the internet. *Id.*; *see also Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104–1105 (C.D. Cal. 2023). To establish a violation of the second clause, Plaintiff must show: (1) Meta read, attempted to read, or learned the **contents** or meaning of any communication; (2) while the communication was in transit; and (3) did so without the consent of all parties to the communication. Cal. Penal Code § 631(a). Because it cannot show *all* these three elements, Plaintiff has failed to allege Motel 6 aided Meta in violating the second clause of Section 631(a). The third clause prohibits using or attempting to use information gained in violation of the first or second clause "in any manner, or for any purpose." *Id.* Because Plaintiff cannot show information gained in violation of either the first or second clause, Plaintiff also cannot show Meta violated the third clause or that Motel 6 aided any such violation.

1. Plaintiff consented to use of the Meta Pixel on Motel 6's Website.

Courts consider arguments that a plaintiff consented via the privacy policy provided the defendant establishes it obtained actual or constructive notice from the plaintiff. *See, e.g., Rodriguez v Autotrader.com, Inc.*, No. 2:24-cv-08735, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025). As discussed in Section III.A, Motel 6 has shown Plaintiff consented to the Terms of Use and the Privacy Policy when she created an account. Moreover, Plaintiff alleges she booked several reservations through the Website. ECF No. 1, ¶ 7. To complete each booking, Plaintiff was required to affirmatively check a box stating, "I agree to the rate and room policies of this reservation.*." *Id.* at ¶ 27 (Fig. 3). The "rate and room policies" are conspicuously provided below the "Confirm Booking" button on the same page as the check box and are collectively indicated by an asterisk corresponding to the asterisk at the end of the statement of agreement. The link "View the Motel 6 Privacy Policy" is provided as part of the "rate and room policies" and is displayed in bold and in a larger font than the preceding text.

The privacy policy sufficiently discloses the behavior about which Plaintiff now complains. Plaintiff alleges Meta received, without Plaintiff's consent, Plaintiff's personally identifiable information; the location of the requested motel; the dates of the requested stay; and the number of adults Plaintiff requested be allowed to stay. ECF No. 1, ¶¶ 8, 37, 51-52. As stated above, the privacy policy discloses Motel 6 collects a user's data when a user books a hotel room, specifically a user's name, email address, telephone number, physical address, and credit card information. It also alerts users to the Website's use of cookies and other tracking technologies that capture the pages on the Website a user accesses and what a user clicks on while on the Website. The privacy policy further states, under the "How We Share Your Personal Data" section, that the data Motel 6 collects may be shared with vendors who perform business, data, or Website-related services on Motel 6's behalf, including

marketing providers. Under the "Notice to California Residents" section, the privacy policy reiterates that Motel 6 collects data from users when they access the Website, including online identifiers (name, postal address, online identifier, Internet Protocol address, email address, or other similar identifiers); commercial information (records of purchasing or consuming histories or tendencies, or other commercial information); and Internet or other electronic network activity information (browsing history; search history; and information regarding consumer's interaction with the website, application or advertisement). The "Notice to California Residents" again provides that the above-mentioned categories of data Motel 6 collects are disclosed to marketing providers, which includes Facebook. These notifications of collection and disclosure in the privacy policy encompass all of the data Plaintiff now alleges were disclosed without her consent.

The Website provides reasonably conspicuous notice of the privacy policy and Motel 6's data collection and disclosure practices to which the Plaintiff is bound, and Plaintiff checked a box agreeing to the "rate and room policies," including the privacy policy, which unambiguously manifested her assent to those terms. Therefore, Plaintiff's claim must be dismissed as all parties to the communication consented to the alleged tracking and interception. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *3–5 (N.D. Cal. July 28, 2021).

2. Plaintiff did not allege the "content" of any communication was shared with any third party.

Courts in the Ninth Circuit hold "contents" "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014); *Jones v. Tonal Sys., Inc*., No. 23-cv-01205, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024) (noting California courts apply the same standard to Section 631(a)). Courts "have dismissed CIPA plaintiffs presenting similar facts for not sufficiently alleging

intercepted 'contents.'" *Jones*, 2024 WL 4357558 at *8 (citing *Graham*, 533 F.Supp.3d at 833 (dismissing complaint to the extent that it alleged "non-content information," including "IP addresses, locations, browser types, and operating systems"); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082 (C.D. Cal. 2021) ("Taken together, this body of caselaw suggests that CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not.");[4] *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816 at *14 (N.D. Cal. Feb. 2, 2021) (data on when, how often, and for how long a user opened certain apps on his smartphone constituted record information and could not support a CIPA claim). "Cases holding that non-text information generated by CIPA plaintiffs constitutes intercepted 'contents' have chiefly focused on 'session replay' technologies, which capture video of the user's entire session." *Id.* (citing *Saleh*, 562 F.Supp.3d at 517-518).

Plaintiff here alleges only that Meta received: the location (e.g., "San Francisco"), dates of the stay, and number of adults in Plaintiff's party as part of a form inquiry to determine availability. ECF No. 1, ¶¶ 8, 37, 51. This information is not the "content" of any communication and rather represents the fields Motel 6 pre-selected and presented options from which a user could select. Choosing from a list of predefined options is not "content" but rather merely behavior, which courts have found does not violate wiretapping laws. *See, e.g.*, *Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1331 (S.D. Fla. 2021) ("Rather, this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."); *Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (finding "the alleged form fields and FID are 'record' information, not "contents.").

In distinguishing between "content" and "non-content," courts have looked to determine whether the transmission includes predefined information generated as a

matter of course or whether the user added something that did not previously exist. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–1109 (9th Cir. 2014). In the *In re Zynga* decision, the Ninth Circuit distinguished between a URL containing a search the user communicated from the address of an existing, predefined, webpage. *Id*. This is consistent with the *Goldstein* decision, which distinguished behavior-information the defendant could have obtained through a security camera at a brick-and-motor store. Where, as here, the alleged interception contains nothing more than predefined links such as dates and a number from a finite list, there has been no interception of the "contents" of any communication.

3. Plaintiff failed to allege any information was "intercepted" while in "transit."

Section 631(a) applies only to communications intercepted "while . . . in transit or passing over any wire, line or cable, or . . . being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Courts have dismissed claims that allege the communication was acquired while in electronic storage rather than during transmission. *See, e.g.*, *Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844, 849–50 (N.D. Cal. 2015), *aff'd*, 723 F. App'x 405 (9th Cir. 2018) ("There can be no interception for purposes of the Wiretap Act if the acquisition of the message occurs while the message is in storage, even if it is in temporary storage incidental to the transmission of the communication.").[3] Stated differently, "once a [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024) (quoting *In re Carrier IQ, Inc.*, 78

[3] This requirement derives from the Ninth Circuit's interpretation of the federal wiretap statute. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002). District courts in this Circuit have found it appropriate to apply an identical standard to interception claims in the CIPA context. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 n.9 (C.D. Cal. 2017) ("Courts have generally construed [CIPA] as coextensive with the Wiretap Act.").

F.Supp.3d 1051, 1077-1078 (N.D. Cal. 2015).

That is what Plaintiff alleges happens here. "Once the individual enters in the information, the individual's browser sends a GET request to Motel 6's server requesting that server load the particular page." ECF No. 1, ¶ 37. "Meta causes the browser to secretly and simultaneously duplicate the communication with Motel 6, transmitting it to Meta's servers alongside additional information . . . ." *Id.* Plaintiff therefore alleges a first message is sent to Motel 6, where it is received, and then the browser—in response to instructions from Meta, not Motel 6—sends a second message to a different source where the second message is not identical due to the "additional information." Under Plaintiff's allegations, the message is not intercepted while "in transit" but is instead sent after the first message is received by Motel 6.

In her complaint, Plaintiff cites three cases to support her allegation that Meta's interception of these communications occurs 'in transit.'" ECF No. 1, ¶ 38 (citing *In re Facebook Internet Tracking Litigation* decision, 956 F.3d 589, 608 (9th Cir. 2020); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *James v. Walt Disney Co.*, No. 23-cv-02500, 2023 WL 7392285, at *15–16 (N.D. Cal. Nov. 8, 2023). None of these decisions support Plaintiff. Both the *In re Facebook Internet Tracking Litigation* and *Revitch* decisions dealt with whether the third party was entitled to the "party exception"; not whether the transmission occurred while the communication was "in transit." *In re Facebook Internet Tracking Litigation*, 956 F.3d at 608 (holding "that simultaneous, unknown duplication and communication of GET request do not exempt a defendant from liability **under the party exception**.") (emphasized); *Revitch*, 2019 WL 5485330 at *2 ("But it cannot be that anyone who receives a direct signal escapes liability by becoming a **party to the communication**." (emphasized). The Ninth Circuit specifically noted it was not opining "whether the Plaintiffs adequately pleaded the other requisite elements of the statutes," which includes whether the interception occurred while in transit. 956 F.3d at 608. Plaintiff is therefore incorrect that these

cases support her position that "interception of these communications occurs 'in transit.'" ECF No. 1, ¶ 38.

Plaintiff is also incorrect that the *James* court found in-transit interception to occur "based on a similar process to the one alleged herein." *Id.* The defendant in *James* argued the third-party software "triggers a second, distinct and sequential data transmission between Plaintiffs' web browsers and Oracle." 701 F.Supp.3d at 961–962. The court did not reject this argument, as Plaintiff suggests. Rather, the court found the defendant ignored additional allegations that alleged a different behavior once the code was on the device. *Id*. at 962. Here, Plaintiff does not allege Meta intercepts anything in "real-time" or "simultaneously with a user's interaction with a website" but rather that Meta causes Plaintiff's browser to "send a separate message to Meta's servers." ECF No. 1, ¶ 36. There is therefore no "interception" while "in transit" and Plaintiff's Section 631(a) claim must be dismissed.

**B. Plaintiff's Invasion of Privacy Claim Must Be Dismissed.**

Article I, section 1 of the California Constitution declares privacy an inalienable right of the people of California. Cal. Const. Art. I, § 1. To assert a claim under the California right of privacy, a plaintiff must allege: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 711 (9th Cir. 2005) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994)).

"As the California Supreme Court has explained, '[t]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy.'" *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (quoting *Hill*, 7 Cal. 4th at 26. "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40.

Plaintiff's claim must be dismissed because she did not have a reasonable

expectation of privacy over the information she alleges was shared with Meta. *Saleh*, 562 F. Supp. 3d at 525 (dismissing claim at pleading stage). "Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). "By contrast, collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *Id.*

Here, Plaintiff alleges the only information shared with both Motel 6 and Meta is: (1) the location of the requested motel (e.g., "San Francisco"); (2) dates of the requested stay; and (3) the number of adults Plaintiff requested be allowed to stay. *Id.* at ¶¶ 8, 37, 51. Although Plaintiff alleges she has a privacy right in this information, this is exactly the type of record information hospitality entities are required to maintain. *See, e.g.*, Los Angeles Municipal Code § 41.49(2)(a). The Ninth Circuit has noted "guests lack any privacy interest of their own in the hotel's records. But that is because the records belong to the hotel, not the guest, and the records contain information that the guests have voluntarily disclosed to the hotel." *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013), *aff'd sub nom.*, 576 U.S. 409 (2015).

California Civil Code § 53.5 does not provide Plaintiff with a reasonable expectation of privacy over the information she alleges was shared with Meta. That section defines a "Guest Record" as information that identifies an individual guest such as "their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civil Code § 53.5(c). The information Plaintiff alleges was shared by Motel 6—the location of the requested motel, dates of requested stay, and number of adults—does not meet this definition. Furthermore, the allegedly transmitted information does not establish the plaintiff is a guest at any Motel 6 property. Plaintiff

instead alleges Motel 6 sends information to Meta when a user *searches* for a property and the dates for their *potential* stay. ECF No. 1, ¶ 26. Section 53.5, however, applies to actual guests.

Plaintiff asserts she has an interest in: (1) precluding the dissemination and/or misuse of her sensitive, confidential communications and sensitive travel information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including but not limited to, the right to visit and interact with various internet sites without being subject to wiretaps without Plaintiff's consent. ECF No. 1, ¶ 87. "Because plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution." *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *5 (N.D. Cal. Dec. 22, 2022) (dismissing California constitutional claim in wiretapping case).

**C. Plaintiff's Claim Must Be Dismissed Because Plaintiff Lacks Article III Standing.**

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), as revised (May 24, 2016). "In general, a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Reichman v. Poshmark*, Inc., 267 F. Supp. 3d 1278, 1283 (S.D. Cal. 2017) (quoting *Spokeo*, 578 U.S. at 341). "A 'bare procedural violation, divorced from any concrete harm,' does not satisfy the injury-in-fact requirement of Article III." *Id*.

Because Plaintiff has failed to show there has been either a wiretapping violation or an invasion of Plaintiff's privacy by Motel 6, Plaintiff has "thus suffered no injury" and lacks any private right of action. *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 835 (N.D. Cal. 2021). "That means they lack Article III standing too." *Id*.

**D. Plaintiff's Complaint Should Be Dismissed with Prejudice.**

Plaintiff's complaint must be dismissed because: (1) Plaintiff consented to the behavior it now claims violates wiretapping law; (2) the information Plaintiff alleges is transmitted to Meta cannot qualify as the "content" of any communication; and (3) Plaintiff alleges two distinct messages are sent from Plaintiff's browser rather than any message being intercepted while "in transit." These issues are inherent in Plaintiff's complaint and cannot be cured via amendment. To overcome these issues, Plaintiff would need to submit entirely different factual allegations that directly contradict Plaintiff's original allegations. Plaintiff's complaint should therefore be dismissed without leave to amend. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) ("It would not be possible for Reddy to amend his complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint. Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading.'") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**V. <u>CONCLUSION</u>**

For these reasons, the Court should dismiss Plaintiff's claims with prejudice.

Dated: February 27, 2025

HUSCH BLACKWELL LLP

By: _/s/ Karen Luong_
Karen Luong (SBN 246809)
karen.luong@huschblackwell.com

***Attorneys for Defendant G6 Hospitality LLC***

## PROOF OF SERVICE

*CYNTHIA SYNDER, v.G6 HOSPITALITY LLC*

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 355 S. Grand Ave., Suite 2850, Los Angeles, CA 90071.

On February 27, 2025, I served true copies of the following document(s) described as **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE OF CIVIL PROCEDURE 12(b)(6)** the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 27, 2025, at Los Angeles, California.

*/s/ Karen Luong*
KAREN LUONG