**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CYNTHIA SNYDER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

G6 HOSPITALITY LLC,

Defendant.

Case No. 5:24-cv-02423-AH-SHK

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL OR ALTERNATIVELY TO DISMISS**

Judge: Hon. Anne Hwang

Hearing: April 2, 2025
Time: 1:30 p.m.

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. PLAINTIFF NEVER AGREED TO ARBITRATE THIS DISPUTE ........ 4

A. Defendant Has Not Established How Plaintiff Registered Her Rewards Account. ........ 4

B. Defendant's Terms Fail To Provide Constructive Notice To Consumers. ........ 7

II. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ........ 10

A. Plaintiff Did Not Consent to the Disclosure of Her Guest Record Information. ........ 10

B. Plaintiff Sufficiently Alleges that Meta Violated the Second Prong of CIPA § 631(a). ........ 12

i. Meta Intercepted the "Contents" of Plaintiff's Communications. ........ 12

ii. Plaintiff Alleges Her Communications Were Intercepted "In Transit." ........ 14

C. Plaintiff Sufficiently Alleges That Defendant Violated the Third Prong of Section 631(a). ........ 16

III. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ........ 16

IV. PLAINTIFF ADEQUATELY PLEADS AN INJURY ........ 19

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Armstrong v. Allied Ins. Co.*,
2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 4

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) .......... 12

*Barclay v. ICON Health & Fitness, Inc.*,
2020 WL 6083704 (D. Minn. Oct. 15, 2020) .......... 5

*Berman v. Freedom Fin. Network, LLC*,
30 F. 4th 849 (9th Cir. 2022) .......... 4, 10

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .......... 12

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 19

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 11

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 10

*Forman v. Davis*,
371 U.S. 178 (1962) .......... 19

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) .......... 14

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 14

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) .......... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 16

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 13, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 13, 18, 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 12, 13, 14

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14

*In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 19

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 15

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) .......... 4, 7

*Lopez v. Dave, Inc.*,
2023 WL 8594393 (9th Cir. Dec. 12, 2023) .......... 10

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 10

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) .......... 16

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 13, 14

*Rocha v. Urb. Outfitters, Inc.*,
2024 WL 393486 n.1 (N.D. Cal. Feb. 1, 2024) .......... 5

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 4, 5, 7, 9

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......... 7, 8, 10

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 12

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 15

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 11

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 15

*Victoria v. Superior Ct.*,
40 Cal. 3d 734 (1985) .......... 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 14

**STATUTES**

Cal. Civ. Code § 53.5 .......... 1, 2, 17, 18

Cal. Civ. Code § 53.5(a) .......... 1, 17

Cal. Civ. Code § 53.5(c) .......... 1, 17, 18

Cal. Civ. Code § 53.5(f) .......... 1, 2

Cal. Civ. Code § 53.5(i) .......... 1

Cal. Penal Code § 631 .......... 1

Cal. Penal Code § 631(a) .......... 12, 16

**RULES**

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 3

## INTRODUCTION

Plaintiff, Cynthia Snyder ("Plaintiff"), individually and as a class representative for all others similarly situated, seeks to represent a putative class of individuals who, like her, booked hotel stays on Defendant's website, www.motel6.com (the "Website") and had their "guest record" information disclosed to Meta, Inc. ("Meta" or "Facebook"). Plaintiff asserts two counts against Defendant G6 Hospitality LLC ("Defendant" or "Motel 6"), one for violation of the California Invasion of Privacy Act, Cal. Penal Code § 631 (the "CIPA") and one for invasion of privacy under the California Constitution. Class Action Complaint (ECF No. 1) ("Compl.") ¶¶ 74-92.

The State of California recognizes the importance of maintaining the privacy of consumers' private travel itineraries. By enacting § 53.5 of the California Civil Code, the state legislature ensured that its citizens would have greater protections regarding such sensitive information. *Id.* ¶ 20. Specifically, Cal. Civil. Code § 53.5(a) provides that owners and/or operators of hotels and lodginghouses "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civil Code § 53.5(c) defines a "guest record" as "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number[.]" While a hotel may disclose such information to its third-party service providers, it may only do so for the limited purpose of providing business-related services. Cal. Civil Code § 53.5(i). Indeed, in order to qualify as a "third-party service provider" under the statute, the entity must have "no independent right to use or share the data beyond the terms of the contract." Cal. Civil Code § 53.5(f).

Plaintiff is a citizen of California who has booked multiple overnight reservations through Defendant's Website. Compl. ¶¶ 5-8. When making reservations on the Website, Plaintiff was unaware that Defendant would share the private details of her stays to unknown third parties. *Id.* ¶ 7. Indeed, as an operator of hotels in the State of California, Defendant had a duty to make sure such "guest record" information was safeguarded and not disclosed. *See* Cal. Civil Code § 53.5; Compl. ¶ 23. Despite this duty, Defendant assisted Meta with intercepting its patrons' private "guest record" information for its own financial benefit, as well as Meta's. Specifically, Defendant assisted Meta in intercepting its customers' check-in and check-out dates, the city of their stay, the name of the hotel, the number of guests in their party, and their Facebook ID. Compl., Figure 5. Meta was then able to use consumers' Facebook ID, which is a unique identifying number, to identify its account holders by name. *Id.* ¶ 52. Meta does not qualify as a third-party service provider, as defined by Cal. Civil Code § 53.5(f), because it uses the private information disclosed by Defendant for its own targeted advertising services. *See, e.g.,* Compl. ¶ 48 ("Thus, Meta uses the information it wiretaps for purposes other than simply providing a recording to its customers, including but not limited to its own contact information matching; measurement and analytics services; ad targeting; commercial and transactional messages; ad delivery improvement; facture and content personalization; and product improvement, provision, and securement."). By assisting Meta with intercepting this protected information, Defendant violated the CIPA and invaded Plaintiff's and putative class members right to privacy.

Knowing it has no real defense, Defendant instead seeks to prevent Plaintiff from pursuing her claims in court. But Defendant cannot compel Plaintiff to arbitration because Defendant does not provide constructive notice of its terms of service when consumers create a My6 rewards account on its Website. Furthermore, while Defendant claims Plaintiff has a My6 rewards accounts, Defendant cannot establish the way in which Plaintiff registered for a rewards account. This is critical,

as there are ways in which Plaintiff may have registered for a rewards account that would not even involve the bare bones website terms of service on which Defendant bases its notice argument (for example on the My6 mobile application).

Similarly, knowing it has failed to establish an enforceable agreement to arbitrate, Defendant next resorts to mischaracterizing Plaintiff's claims or simply ignoring portions not helpful to its argument. Plaintiff has detailed at length the ways in which Defendant has assisted Meta in intercepting its customer's confidential "guest record" information. *See* Compl. ¶¶ 24-64. Nonetheless, Defendant attempts to establish consent for the disclosures at issue by relying on vague and generic privacy policies on its Website. *See* Motion to Compel at 16-17. ECF No. 15 ("Motion"). But such policies fail to disclose that confidential "guest record" information will be shared with and used by third parties. The California legislature has recognized the important privacy interests at stake concerning the disclosure of "guest record" information. This Court should too.

Accordingly, the Court should deny Defendant's Motion in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-

moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

## I. PLAINTIFF NEVER AGREED TO ARBITRATE THIS DISPUTE

### A. Defendant Has Not Established How Plaintiff Registered Her Rewards Account.

Consumers can register for a My6 rewards account in several ways: 1) on Defendant's Website; 2) during the checkout process when booking an overnight reservation; or 3) through Defendant's mobile app. While there are several ways in which a consumer can register for a My6 rewards account, Defendant only discusses one – as this is the only registration method in which consumers would arguably be presented with Defendant's terms, and therefore the only method under which Defendant could make a colorable (although incorrect) argument that Plaintiff should be compelled to arbitration. Although Defendant discusses at length the process for My6 account registrations through its Website, it does not definitively state that this was the method used by Plaintiff when she created her account (because it does not know). This is simply not sufficient for Defendant to meet its burden to establish that Plaintiff was presented with, let alone affirmatively agreed to, Defendant's terms.

"[T]he threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021). To form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849, 855 (9th Cir. 2022). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence", *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th

Cir. 2023), and the court construes "all facts and reasonable inferences in a light most favorable to the non-moving party." *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *2 n.1 (N.D. Cal. Feb. 1, 2024) (citing cases). If multiple registration methods exist, the movant must establish which method was utilized by the nonmovant. *Barclay v. ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *3 (D. Minn. Oct. 15, 2020) (when four registration methods existed the court analyzed each one to determine whether the plaintiffs were bound by an agreement to arbitrate). "While California public policy favors arbitration, 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.'" *Sellers*, 73 Cal. App. 5th at 463 (*quoting Victoria v. Superior Ct.*, 40 Cal. 3d 734, 744, 222 Cal. Rptr. 1, 710 P.2d 833 (1985)).

Here, Defendant must establish the method in which Plaintiff created her My6 rewards account. As discussed above, there are several ways in which a consumer can register for a My6 rewards account, including during the checkout process or through Defendant's mobile app. A consumer registering for a My6 rewards account during the checkout process is presented with the following prompt:




*See* Declaration of Sarah Westcot ("Westcot Decl.") Ex. A. This process is seamless and merely requires the consumer to check off a box to register for their account. A consumer may also register for a My6 rewards account after downloading

Defendant's mobile app. A consumer registering via this method is presented the following sign up page:




Westcot Decl. Ex. B. Notably, *neither* of these methods presents *any* terms that a consumer must agree to in order to create their account.

In support of its Motion, Defendant submitted the Declaration of Anurag Pareek (ECF No. 16) ("Pareek Decl."). The Pareek Declaration confirms that consumers can create a My6 rewards account through Defendant's Website. *Id.* ¶ 3. Although this declaration states that Plaintiff has a My6 rewards account (*id.* ¶ 6 "I have determined that Plaintiff created a My6 account") and approximately when she created her account (*id.* "…at least as of the time when she booked the reservations identified in the complaint") it tellingly says *nothing* about *how* she created her account, nor does it state that Plaintiff created her account through Defendant's

Website. This is fatal to Defendant's argument, as Defendant cannot establish that Plaintiff agreed to the terms it now seeks to bind her to. Defendant's Motion should be denied on this basis alone. *Johnson*, 57 F.4th at 681.

### B. Defendant's Terms Fail To Provide Constructive Notice To Consumers.

Even if Plaintiff did create a My6 account on Defendant's Website (which they do not allege and cannot confirm) and the sign-up page provided by Defendant is the relevant page Plaintiff used to create her My6 rewards account, Defendant still fails to establish an enforceable agreement. That is because the agreement fails to provide consumers with constructive notice as to the existence of the terms of service. Accordingly, Plaintiff cannot be compelled to arbitrate her claims.

"[I]n order to establish mutual assent for the valid formation of an internet contract, a provider must first establish the contractual terms were presented to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking a button." *Sellers*, 73 Cal. App. 5th at 461. "In considering the adequacy of online notice, California appellate courts and the Ninth Circuit have repeatedly emphasized that because online providers have complete control over the design of their websites, they bear the responsibility to put users on notice of the terms they intend to enforce." *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1094 (C.D. Cal. 2023).

*Open Road* is instructive. There, the court determined the following sign-up page was insufficient to provide constructive notice of the terms of service:




Westcot Decl. Ex. C. The court paid particular attention to the size and placement of the text on the sign-up page. *Id.* at 1096 ("The fact that the notice language is not immediately adjacent to the "Sign Up" button, but rather separated by larger and darker text addressing users with existing accounts, further detracts from its conspicuousness.").

Here, the page where the relevant hyperlinks appear on Defendant's Website is demonstrably less conspicuous than those presented in *Open Road*, as the terms are intentionally placed far beneath the "Continue" button consumers must select and it is in smaller font than the rest of the text on the sign-up page:




*See* Pareek Decl. ¶ 4.

The comparisons provided by Defendant of other sign-up pages only further demonstrate the inadequacy of its own page. For example, both defendants in *Rainey* and *Lee* provide consumers with notice of their relevant terms and policies by conspicuously placing them *directly* beneath the "sign up" button clicked by consumers. *See* Motion at 10. This is not the case for consumers registering for accounts through Defendant's Website, as Defendant has placed additional links and larger text between the "Continue" button and its terms. Defendant also places a "check box" above the "Continue" button consumers must select to create an account, distracting further from the terms located at the bottom of the page. Additionally, the font of Defendant's terms of service is noticeably smaller than that of the other text provided above. *See Sellers*, 73 Cal. App. 5th at 481 (finding notice language "in a smaller print than any other print on the page" inconspicuous and

inadequate notice); *Berman*, 30 F.4th at 856–57 (small font is inconspicuous where it is "considerably smaller than the font used in the surrounding website elements…."). Courts consistently find such arraignments fail to provide conspicuous notice to consumers. *See Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d at 1097; *Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023).

Accordingly, Defendant's Motion should be denied.[1]

## II. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

### A. Plaintiff Did Not Consent to the Disclosure of Her Guest Record Information.

Defendant argues that Plaintiff's CIPA claim fails because its "privacy policy sufficiently discloses the behavior about which Plaintiff now complains." Motion at 16. That is wrong.

As a preliminary matter, what a reasonable consumer would believe if they were on notice of the privacy statements at issue cannot be determined at this stage. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy*

[1] Because Defendant cannot establish that Plaintiff agreed to be bound by its terms of service, it also cannot enforce the provisions seeking to apply New York law, transfer venue to Texas, and waive Plaintiff's right to a jury trial.

*v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ("Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta.").

Here, there is at least a question of fact as to whether the policies did indeed disclose (and thus sufficed as consent for) the wiretapping. That is because Defendant's privacy policy is silent as to the *specific* disclosures alleged herein. Defendant fails to cite a single provision in its privacy policy that it shares hotel booking information (i.e. "guest record" information) with third parties, like Meta. *See, e.g.,* Motion at 16-17. This is a crucial distinction, as such information is specifically protected by California law. Here, Defendant disclosed Plaintiff's "guest record" information to Meta in violation of California law, because Meta used the protected information it intercepted for its own marketing purposes. *See* Compl. ¶¶ 39, 48. Plaintiff did not authorize Defendant nor Meta to monetize her protected "guest record" information in this manner. Based on the privacy policy relied upon by Defendant, Plaintiff would have no way of knowing that her protected "guest record" information was being disclosed to third parties in violation of California law. Such allegations are more than sufficient at this stage. *See*, *e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756–57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.") (cleaned up); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to

any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (finding allegations that "Plaintiff's Complaint states that she 'did not give consent—written or otherwise—to Defendant to collect voiceprints' and that she was enrolled in the MyVoice program as early as 2017" sufficient at the pleadings). Defendant's reliance on *Silver* is misplaced, as the information disclosed was explicitly disclosed in the defendant's privacy policy and not independently protected from disclosure by California law. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *3–5 (N.D. Cal. July 28, 2021).

### B. Plaintiff Sufficiently Alleges that Meta Violated the Second Prong of CIPA § 631(a).[2]

#### i. Meta Intercepted the "Contents" of Plaintiff's Communications.

Defendant argues that Plaintiff's CIPA claim fails because she only alleges the interception of "record" information. Motion at 17-18. That is wrong.

CIPA § 631(a) prohibits the unauthorized disclosure of the contents of communications. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). "Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act, … and [u]nder the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked," *see In re Meta Pixel*, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7,

[2] Plaintiff does not bring claims under the first clause of CIPA § 631(a).

2023); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Here, Plaintiff alleges that the contents of her communications were intercepted by Meta. For example, when consumers, including Plaintiff, entered their "guest record" information (including the dates and destination of their trip) through Defendant's Website, Defendant assisted Meta in intercepting the contents of those communications. Compl., Figure 2, Figure 5. Under California law, such information is the "content" of the communication, as opposed to mere record information, because it is the "intended message of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1. Each of these interceptions is tethered to a unique Facebook ID, which Meta uses to identify its account holders. Defendant's argument that such information is merely "record" information is contrary to California law.

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) does not compel a different result. In *Zynga*, the URLs "at issue [] include[d] only basic identification and address information, not a search term or similar communication made by the user, and therefore d[id] not constitute the contents of a communication." *Zynga*, 750 F.3d at 1109. In its analysis, the Ninth Circuit contrasted this information with "a Google search URL [that] not only shows that a user is using the Google search engine, but also shows the specific search terms the

user had communicated to Google." *Id.* at 1108 (citing *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008). Here, as discussed above, Plaintiff's communications are more akin to the "Google search URL" described in *Zynga*.

The authority relied upon by Defendant is inapposite, as they all concern the use of session replay technology, not the Facebook Tracking Pixel. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077 (C.D. Cal. 2021) ("[Defendant] uses Quantum Metric software called "Session Replay" to capture a customer's interactions with [its] webpage."); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1319 (S.D. Fla. 2021) ("This action joins a flurry of virtually identical cases…attack[ing] the use of so-called session replay software on commercial websites."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 827 (N.D. Cal. 2021) (same). The remaining authority relied upon by Defendant does not support its contention that "content" excludes "predefined options from which a user could select." Motion at 18. Such a contention is at odds with relevant authority confirming that a consumer's interaction with a website constitutes "content," including the buttons clicked by consumers. *In re Meta Pixel*, 647 F. Supp. 3d at 795; *see also Revitch, LLC*, 2019 WL 5485330, at *1 (same).

#### ii. <u>Plaintiff Alleges Her Communications Were Intercepted "In Transit."</u>

Defendant argues that Plaintiff fails to establish that her communications were intercepted "in transit" because "the message is…instead sent after the first message is received by Motel 6." Motion at 20. Contrary to Defendant's contention, Plaintiff has alleged that Meta intercepted her communications in transit:

> Once the individual enters in the information [to book a stay on the Website], the individual's browser sends a GET request to Motel 6's server requesting that server to load the particular webpage. Because Motel 6 utilizes the Meta Tracking Pixel, Meta's embedded code, written in JavaScript, sends secret instructions back to the individual's browser or mobile phone, without alerting the individual that is happening. Meta causes the browser to secretly and simultaneously

> duplicate the communication with Motel 6, transmitting it to Meta's servers alongside additional information that transcribes the communication's content and the individual's identity.
>
> In other words, when a user communicates with Motel 6's Website, those communications are simultaneously and contemporaneously duplicated and sent to Meta at the same time they are being sent to Motel 6. Thus, Meta's interception of these communications occurs 'in transit.'

Compl., ¶¶ 37-38. These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. Courts have found near identical allegations concerning interceptions through the Facebook Tracking Pixel to satisfy the "in transit" requirement. *See St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]").

Once again, Defendant fails to cite any relevant authority concerning the Facebook Tracking Pixel. Defendant's conclusory assertion that the communication is not intercepted "in transit" is without merit and contradicts the well-pled allegations of the Complaint. ¶ 37 ("Meta causes the browser to secretly ***and simultaneously duplicate*** the communication with Motel 6, transmitting it to Meta's servers alongside additional information that transcribes the communication's content and the individual's identity.") (emphasis added); *see also James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961–62 (N.D. Cal. 2023) (finding similar allegations that interceptions occurred simultaneously with website interaction satisfied CIPA's "in transit" requirement).

### C. Plaintiff Sufficiently Alleges That Defendant Violated the Third Prong of Section 631(a).

Defendant argues that "[b]ecause Plaintiff cannot show information gained in violation of either the first or second clause, Plaintiff also cannot show Meta violated the third clause of that Motel 6 aided any such violation." Motion at 15. Not so. Plaintiff sufficiently alleges that Meta violated the second prong of Section 631(a), as discussed, *supra*. As such, Plaintiff has satisfied the prerequisite for pleading a violation of the third prong of Section 631(a). *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiff must establish that the information at issue . . . was obtained through a violation of the first or second clauses.").

## III. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant argues that "Plaintiff's claim must be dismissed because she did not have a reasonable expectation of privacy over the information she alleges was shared with Meta." Motion at 22. That is wrong.

To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege, "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014). In California, an individual has a legally protected privacy interest in "precluding the dissemination or misuse of sensitive and confidential information." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 856, 865 P.2d 633 (1994). This includes basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Although "routine collection of personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of

intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). Here, Plaintiff's legally protected privacy interest is bolstered by the fact that the information disclosed by Defendant is specifically protected from disclosure under Cal. Civil Code § 53.5. California law mandates that "guest record" information is confidential. Indeed, Cal. Civil Code § 53.5(a) provides that an "owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations[] … shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." *See also* Cal. Civil Code § 53.5(c) ("'Guest record' for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee[.]"). Cal. Civil Code § 53.5 was borne out of the State Legislature's concerns that

> [p]rotecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.
>
> Therefore, it is the intent of the Legislature to further Californian's right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended purposes and not improperly disclosed.

Compl. ¶ 21.

Here, Plaintiff not only alleges the disclosure of PII, but also protected "guest record" information. Defendant's argument that Plaintiff only alleges "*searches* for a property and the dates for their *potential* stay" (Motion at 23) ignores the allegations in Plaintiff's Complaint. *See* Compl. ¶ 7 ("In order to book her stay, Plaintiff visited the Website, where she input a destination and the dates of her stay to look for overnight accommodations. Plaintiff selected a room at Defendant's

Westminster, California location and began the checkout process with the understanding that his sensitive trip details would not be shared with third parties such as Meta."); *see also id.* ¶ 51 ("For example, as alleged above, when a customer accessed [the Website] and began booking their hotel, Defendant transmitted information relating to the specific customer's trip to Meta."). By disclosing such information, Defendant committed a serious invasion of Plaintiff's and putative class members' protected privacy interest. *See id*. ¶ 3.

Defendant's attempt to evade its legal obligations by arguing that California law requires it to maintain Plaintiff's "guest record" information. Motion at 22. Defendant misrepresents the nature of Plaintiff's claims. Plaintiff does not bring this action because Defendant *maintained* her "guest record" information, but rather, because Defendant *disclosed* her guest record information without authorization. Compl. ¶¶ 7-9, 20-23.

Finally, Defendant argues that "the location of the requested motel, dates of requested stay, and number of adults" does not meet the definition of "guest record" information under Cal. Civ. Code § 53.5. Motion at 22. Once again, Defendant misrepresents Plaintiff's allegations. In addition to this information being intercepted by Meta, Defendant also assists Meta in intercepting each putative class members Facebook ID, which Meta can use to connect class members with their Facebook profile. Compl. ¶ 52. Each transmission related to the requested motel location, dates of stay, and number of adults constitutes "guest record" information because it is tethered to a unique Facebook ID. *See* Cal. Civ. Code § 53.5(c) ("'Guest record' for the purpose of this section includes any record that identifies an individual guest…including, but not limited to, their name, social security number or *other unique identifying number*[.]") (emphasis added).

Accordingly, Plaintiff has done more than enough to establish a legally protected privacy interest and an egregious invasion of that privacy interest by the Defendants.

## IV. PLAINTIFF ADEQUATELY PLEADS AN INJURY

Defendant argues that Plaintiff fails to satisfy the injury-in-fact requirement of Article III standing because she fails to state a claim under the CIPA or for invasion of privacy. Motion at 23. That is wrong. Plaintiff has established violations of both the CIPA and an invasion of privacy related to Defendant's conduct for all the reasons discussed, *supra*. Because Plaintiff states claims under the CIPA and an invasion of privacy, she satisfies Article III's injury requirement. *See, e.g., In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("Violations of the right to privacy have long been actionable at common law."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (same).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, if the Motion is granted in any respect, Plaintiff should be given leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: March 12, 2025

**BURSOR & FISHER, P.A.**

By: <u>*/s/ Sarah N. Westcot*</u>
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*