Karen Luong (SBN 246809)
karen.luong@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand, Suite 2850
Los Angeles, CA 90071
213.337.6550 Telephone
213.337.6551 Fax

Dustin L. Taylor (admitted *pro hac vice*)
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
303.749.7200 Telephone
303.749.7272 Facsimile

***Attorneys for Defendant***
***G6 Hospitality LLC***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CYNTHIA SYNDER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

G6 HOSPITALITY LLC,

Defendant.

Case No: 5:24-cv-02423-AH-SHK

**DEFENDANT G6 HOSPITALITY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL**

**Date/Time: April 2, 2025 1:30pm**
**Judge: Hon. Anne Hwang**

**TABLE OF CONTENTS**


I. INTRODUCTION ... 1

II. PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF AGREED TO ARBITRATE THE CLAIMS. ... 2

- A. Motel 6 Has Shown Plaintiff Agreed to the Terms When She Created a My6 Account. ... 2
- B. Motel 6's Sign-Up Page Provides Constructive Notice. ... 3
- C. This Court Should Transfer Any Remaining Claims to the Northern District of Texas. ... 4

III. PLAINTIFF DOES NOT STATE A CLAIM UNDER CIPA § 631 ... 5

- A. Consented to the Alleged Activity. ... 5
- B. Motel 6 Did Not Aid Meta in Intercepting the "Contents" of Any Communication. ... 7
- C. Plaintiff's Factual Allegations Show There Was No Interception While "In Transit." ... 8

IV. PLAINTIFF DOES NOT STATE A CLAIM FOR INVASION OF PRIVACY ... 11

V. PLAINTIFF FAILS TO ESTABLISH STANDING. ... 12

VI. PLAINTIFF'S COMPLAINT MUST BE DISMISED WITH PREJUDICE. ... 12

VII. CONCLUSION ... 12

## TABLE OF AUTHORITIES

Page(s)

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 05, 2023) ....................... 9, 10

*Barclay v. ICON Health & Fitness, Inc.*,
2020 WL 6083704 (D. Minn. Oct. 15, 2020) ....................... 3

*Berman v. Freedman Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................... 4

*Castilla v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wa. Nov. 14, 2024) ....................... 8

*Heinz v. Amazon.com, Inc.*,
2024 WL 5304886 (W.D. Wash. Dec. 18, 2024) ....................... 5, 6

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................... 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................... 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................... 8

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................... 9

*McCoy v. Alphabet Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................... 5

*Nail v. Lens.com, Inc.*,
2024 WL 3723912 (C.D. Cal. June 20, 2024) ....................... 4

*Patel v. City of Los Angeles*,
738 F.3d 1058 (9th Cir. 2013) ....................... 12

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................... 8

*Saeedy v. Microsoft Corp.*,
No. C24-0219-SKV, 2024 WL 4945106 (W.D. Wash. Nov. 21, 2024) ....................... 3

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................... 11

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ....................... 3, 4, 7

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................... 5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................... 5, 6, 11

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ....................... 9

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ....................... 9, 10

**Regulations**

Cal. Civil Code § 53.5 .......................................................................................... 11, 12
Cal. Civil Code § 53.5(i)............................................................................................ 12

# I. INTRODUCTION

Plaintiff's opposition confirms there are no factual disputes, Plaintiff compelled to arbitrate her claims, and all remaining issues transferred to the Northern District of Texas or dismissed with prejudice.

The parties agree Plaintiff used the website to book her hotel reservations for three years. The parties do not dispute Plaintiff has a My6 account or that users are required to agree to the Terms of Use when signing up for a My6 account on the Website. Neither do the parties dispute the Terms contain an enforceable arbitration agreement or that they require any claims not subject to arbitration to be litigated on an individual basis in Texas. While the parties dispute whether the sign-up screen provides constructive notice as a matter of law, Plaintiff identifies only one issue with the sign-up screen; the presence of options other than email to sign up. Because each of these buttons are an action button by which the user would sign up for My6 and agree to the Terms, Plaintiff's argument fails. Moreover, the location of the Terms relative to the action button is merely one factor courts consider when determining whether a sign-up screen provides constructive notice. The other factors—such as the Terms being in blue font—support finding the screen provides constructive notice.

The parties also agree the complaint alleges the Pixel transmits only the dates of the requested stay, general location, and number of adults to Meta. ECF No. 1, ¶ 37. Whether this is the "content" of any communication or merely record information is a legal issue proper for the Court to resolve. Similarly, whether this information qualifies as a "guest record" and is "highly sensitive" to support Plaintiff's invasion of privacy claim is a legal question.

Plaintiff's position on these issues ignores Ninth Circuit guidance and would render unlawful industry-standard website marketing tools regardless of whether the tools are used to share content created "by the user." The information Plaintiff alleges was sent to Meta is merely record information and more akin to a user browsing in a store than any sort of communication with a sales representative. The information

cannot qualify as "guest record" because, as the Complaint confirms, it is generated only when a user inquiries whether a room is available on a given date. The information is thus not "highly sensitive" or "intimate."

The parties also agree that the complaint alleges the information is provided to Meta in two transmissions. The first from Plaintiff's browser to Motel 6's server and the second when Plaintiff's browser duplicates a message, adds information to it, and sends that message to Meta. Under even the authority Plaintiff cites, this is insufficient to meet the "in transit" requirement and requires dismissal.

Because there are no factual disputes, Motel 6 respectfully requests the Court grant Motel 6's motion, compel Plaintiff to arbitrate her claims, and transfer any remaining claims to the Northern District of Texas pursuant to the arbitration agreement. In the alternative, Motel 6 respectfully requests the Court dismiss the claims for the reasons explained below.

## II. PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF AGREED TO ARBITRATE THE CLAIMS.

### A. Motel 6 Has Shown Plaintiff Agreed to the Terms When She Created a My6 Account.

Motel 6's opening brief establishes when a user signs up for Motel 6's rewards program (My6) the user agrees to the Terms of Use and Privacy Policy. ECF No. 15 (Op. Br.) at 3; ECF No. 16 ("Pareek Decl.") at ¶¶ 4–7.

Plaintiff does not argue the Terms do not require arbitration. Indeed, Plaintiff alleges she "booked several reservations **through the Website** throughout the past three years." ECF No. 1, ¶ 7 (emphasized). Neither does Plaintiff argue she did not actually agree to the Terms. Plaintiff instead argues there are multiple ways to sign up for the My6 program and Motel 6's motion to dismiss should be denied because Motel 6 did not "definitively state that this was the method used by Plaintiff when she created her account." ECF No. 19 ("Resp."), 19. Although Plaintiff also knows what method she used when signing up for My6 rewards, Plaintiff remains silent. She does

not say she did not sign up via the website or that she did not agree to the Terms. *Saeedy v. Microsoft Corp.*, No. C24-0219-SKV, 2024 WL 4945106, at *16 (W.D. Wash. Nov. 21, 2024) (finding in the absence of counter evidence that the plaintiff assented to Terms). Indeed, the Terms expressly govern Plaintiff's use of Motel 6's websites and "mobile applications." Ex. A to Pareek Decl. at 1.

Neither does Plaintiff dispute she has seen the Privacy Policy including when making a reservation, instead arguing that the Privacy Policy does not disclose the alleged activity. Resp., 11. Section Two of the Privacy Policy ("How We Use Your Personal Data") provides a direct link to the Terms of Use. Ex. B to Pareek Decl.

Plaintiff's reliance on *Barclay* is misplaced. Resp., 5 (citing *Barclay v. ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *3 (D. Minn. Oct. 15, 2020)). In that case the court found the defendant had shown the plaintiff agreed to the Terms despite there being multiple methods to create an account. *Id.* at *10.

There is no factual dispute that Plaintiff used the website to book reservation for a period of at least three years; that she created a My6 account; or that users who do so via the website are required to agree to the Terms of Use, which contain an arbitration provision. Plaintiff should be compelled to honor her agreement and arbitrate these claims.

**B. Motel 6's Sign-Up Page Provides Constructive Notice.**

Plaintiff argues Motel 6's sign-up page fails to provide consumers with constructive notice as to the existence of the Terms because the terms are separated from the "continue" button by an option to "join with social" and the terms are "in smaller front than the rest of the text on the sign-up page." Resp., 7 (citing *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1094 (C.D. Cal. 2023).

Plaintiff is wrong. The size of the font informing users that by signing up they agree to the My6 Terms of Use and Privacy policy is the same size as the fields where users enter their information. *See* Pareek Decl., ¶ 4 (showing form). "Unlike in *Serrano*, the font size in this case, although smaller than [some of] the surrounding

text, is not 'so small that it is barely legible to the naked eye.' Instead, the font is large enough for a user to identify and read the notice of the Terms of Use." *Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *4 (C.D. Cal. June 20, 2024) (quoting *Berman v. Freedman Fin. Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022).

Although Plaintiff would have this Court believe the *Serrano* court found the sign-up page did not provide constructive notice based only on the terms not being located directly below the action button, this is not true. Rather the *Serrano* court focused on the size of the text, the location of the terms, and whether the hyperlinked-terms were designated by a contrasting font color (typically blue) or the use of all capital words. 666 F. Supp. 3d at 1096–1097. The *Serrano* court found it was the combination of these three things that failed to provide constructive notice. *Id.*

The presence of an alternative way to join My6 ("Join with Social") that is between the "Continue" action button and the links to the Terms is not enough to find the Motel 6 sign-up screen does not provide constructive notice to users.[1] The "intermediate" text is simply other action buttons similar to the "continue" button by which the user can join My6. The sign-up screen is clear: regardless of the method used "By signing up" users "agree to the My6 Terms of Use and Privacy Policy." Pareek Decl., ¶¶ 4–5. Moreover, the hyperlink to the Terms of Use is placed in blue font to "put "a user on notice of their existence" by distinguishing the links from the surrounding text. *Berman*, 30 F.4th 857.

### C. This Court Should Transfer Any Remaining Claims to the Northern District of Texas.

Motel 6's opening brief establishes that because Plaintiff agreed to the Terms, she also agreed to arbitrate her claims, to submit to the exclusive jurisdiction in Texas for any other claims not subject to the arbitration agreement, and to waive her right to

---

[1] Plaintiff does not address the two decisions Motel 6 cites in its opening brief; both of which support finding Motel 6's sign-up page meets the Berman standard and provides constructive noticed to consumers. Op. Br., 8–10.

jury trial. Op. Br., 10–13. Plaintiff does not dispute that if the Court finds Plaintiff agreed to the Terms of Use that the Court must dismiss this complaint. Plaintiff instead argues only that Motel 6 has not shown Plaintiff agreed to the Terms. Resp., 4–10. Plaintiff then argues in a footnote that Motel 6 consequently cannot enforce the provisions of the Terms. *Id.* at 10 n.1. Because Motel 6 has shown Plaintiff agreed to the Terms, the parties agree the Court should enforce the agreement, including by transferring any remaining claims to the Northern District of Texas.

## III. PLAINTIFF DOES NOT STATE A CLAIM UNDER CIPA § 631

### A. Plaintiff Consented to the Alleged Activity.

Plaintiff does not argue she did not view the privacy policy and its disclosures either when making an account or when booking a room the multiple times she did so. Plaintiff instead argues it is improper to dismiss her claims because "what a reasonable consumer would believe if they were on notice of the privacy statements at issue **cannot** be determined at this stage." Resp., 10 (emphasized). Plaintiff cites several decisions from outside this district, none of which are persuasive. Moreover, one of the decisions on which Plaintiff relies—*McCoy v. Alphabet Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021)—notes that courts have in fact dismissed such claims at the pleading stage. *McCoy*, 2021 WL 405816, at *6 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). In *Smith*, the court not only dismissed the plaintiff's wiretapping claim but also rejected the plaintiff's argument that the privacy policies were "too 'vague' and 'broad' to be enforceable." Thus, not only *can* a court find the plaintiff consented due to language in the privacy policy, but a court can do so even where the plaintiff, as here, argues the privacy policy is ambiguous. *See also Heinz v. Amazon.com, Inc.*, 2024 WL 5304886, at *3 (W.D. Wash. Dec. 18, 2024) (rejecting argument that policy language was not explicit enough and finding consent where the plaintiff had multiple interactions with the defendant's website, including making purchases); *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *4–*5 (N.D. Cal. July 28, 2021) (dismissing

wiretap claims after rejecting the plaintiff's argument that the policy did not provide sufficient notice that the defendant would collect the information it did).

Plaintiff next argues the privacy policy does not disclose that Motel 6 shares hotel booking information (i.e., "guest record" information) with third parties such as Meta. Resp., 11. Initially, Plaintiff incorrectly describes what she alleges Motel 6 shares with Meta as "guest record" information as explained in Section IV below. What Motel 6 allegedly shares is not "guest record" information but rather merely what predefined options a user selects when inquiring whether a room is even available.

Regardless, Motel 6's privacy policy discloses the alleged activity. The privacy policy specifically mentions Facebook and instructs users what data Motel 6 collects if the user logs in using their Facebook account. Ex. B to Parek Decl. at 2–3. Under the "Personal Data We Collect" section, the policy discloses Motel 6 collects information when a user books a hotel room and shares this information with "marketing providers." *Id.* at 1. Under the "Notice to California Residents" section (which would include Plaintiff), Motel 6 discloses it collects online identifier (which would include the Facebook ID); (2) commercial information, including "consuming histories or tendencies"; and (3) Internet network activity, including "search history and information regarding consumer's interaction with the website". *Id*. at § 7 And the policy discloses this information is provided to marketing providers and that Motel 6 shares unique personal identifiers, including "pixel tags," to marketing providers. *Id*.

Plaintiff is therefore wrong that the Motel 6 privacy policy does not disclose the behavior about which Plaintiff now complains. Because Plaintiff never argues she was not on notice of the privacy policy at least when she booked her stays at multiple Motel 6 properties, dismissal is proper. Plaintiff cannot avoid dismissal simply by claiming the privacy policy does not unambiguously disclose the alleged behavior when it does. *Smith*, 262 F. Supp 3d at 954; *Heinz*, 2024 WL 5304886, at *3.

**B. Motel 6 Did Not Aid Meta in Intercepting the "Contents" of Any Communication.**

Plaintiff's interpretation of what constitutes "content" for purposes of a wiretapping law would render meaningless the Ninth Circuit's *In re Zynga* decision by making any information sent to a third party "content" by default. Plaintiff argues record information generated when a user chooses from predefined options submits an availability inquiry is "content" because it is the "intended message" of the communication. Resp., 13. Plaintiff's argument assumes her desired conclusion and never explains what the "intended message" would be: that plaintiff inquired whether a room was available? If so, then the URLs in *Zynga* would also be content. The plaintiffs there argued a user who clicked on an ad displayed on a gay support page would communicate to the advertiser that they were gay and struggling to come out of the closet. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). The Ninth Circuit held, as this Court should also, that "[t]his argument fails." *Id.* The Ninth Circuit found "[u]nder some circumstances," a URL *could* amount to disclosure of the contents of a communication where it did not include "a search term or similar communication **made by the user**". *Id.* at 1108–1109 (emphasized). Because the information Plaintiff alleges was transmitted to Meta in this case does not include any communication made "by the user" but rather form fields Motel 6 populated, there is no transmission of "content" to any third party.

Plaintiff attempts to distinguish Motel 6's authority by arguing it pertains to session replay technology rather than the Pixel. Resp., 14. Plaintiff does not explain, however, why this makes the authority less, not more, persuasive. Session replay technology can capture not only a user's requests to a webserver but the user's very keystrokes. Cases involving the Meta Pixel, such as this one, instead merely involve notifying Meta when an action is taken, such as clicking a link that generates a URL.

Plaintiff argues transmitting what "buttons" a user clicks constitutes transmitting the "content" of a communication. Resp., 12–14 (citing *In re Meta Pixel*

*Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). Such a broad reading of this case however would ignore *Zynga*'s direction that the communication be made "by the user." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014). Other courts have acknowledged sharing the identity of what buttons website visitors click may be mere record information. *Castilla v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wa. Nov. 14, 2024).

*Revitch's* shopping analogy further supports Motel 6's position and requires dismissal. 2019 WL 5485330, at *1. The parties seemingly agree a customer in a brick-and-mortar store would not communicate by searching through inventory. *Id.* The parties also agree that a consumer who calls a store and talks with a salesperson communicates with the retailer. *Id.* On that spectrum, however, the alleged actions are more akin to a customer browsing in a store than talking with a salesperson. Just as the customer in the store would browse around the store's designed layout to determine if the store had jeans in the customer's size in stock, Plaintiff browsed the layout of Motel 6's website to determine if Motel 6 had a property available that met Plaintiff's requirements (e.g., general location, dates, and able to fit the number of adults). Plaintiff did not pick up the phone and call Motel 6 or engage a chat service to talk with a customer support agent. Plaintiff merely browsed the website and selected from existing options.

### C. Plaintiff's Factual Allegations Show There Was No Interception While "In Transit."

Motel 6's opening brief established Plaintiff failed to allege any interception that occurred while "in transit." Op. Br., 19–21. Rather, the complaint alleges Plaintiff's browser sends a first message, receives a response, and then sends a separate message with additional information to Meta. *Id.* (citing ECF No. 1, ¶ 37). In its Response, Plaintiff argues paragraphs 37 and 38 of her complaint allege Meta

intercepted her communications "in transit." Resp., 14. Stripped of their conclusory allegations, however, these paragraphs instead support Motel 6's position. There is no interception. Rather there are two separate messages: the first from Plaintiff's browser to Motel 6's server and a second from Plaintiff's browser directly to Meta. ECF No. 1, ¶ 37. The second message includes "additional information that transcribes the communication's content and the individual's identity." *Id* at ¶ 37.

Plaintiff does not address Defendants' argument that none of the cases she cites in her complaint (including *James*) support her position. Plaintiff instead criticizes Defendant for not "cit[ing] any relevant authority concerning the Facebook Tracking Pixel." Op. Br., 21. Plaintiff cites *James* to again argue courts have found "similar allegations" satisfied the "in transit" requirement. Resp., 15 (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961–62 (N.D. Cal. 2023). Motel 6 explained in its opening brief, however, that this is simply not true. Op. Br., 21. The *James* court recognized the third-party code in that case "triggers a second, distinct and sequential data transmissions between Plaintiffs' web browsers and [the third party]." 701 F. Supp. 3d at 961. Although *James* found the "in transit" requirement satisfied, it did so because of additional factual allegations not present here. Plaintiff does not respond to Motel 6's argument regarding *James*.

Plaintiff also argues two additional decisions support Plaintiff's interpretation that the alleged behavior meets the "in transit" requirement. Resp., 15 (citing *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023)). They do not. The *St. Aubin* court emphasized sequential messages are not intercepted "in transit." 2024 WL 4369675, at *7 (citing *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *5 (Cal.Super. Jan. 05, 2023)). The *Barbour* court considered nearly identical allegations as the ones here. The individual's browser sent a GET request to the defendant's server requesting to load the page. 2023 WL 2618967, at *5. The defendant's browser sent a responsive message which

included the Facebook pixel code. *Id.* Facebook's code instructed the browser to "secretly duplicate" the communication "transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." *Id*. The court found these allegations established "the duplication and sending of Facebook's secret code happens after the request reaches its destination" and the plaintiff therefore failed to allege any interception occurred while "in transit." *Id*. (sustaining demurrer).

Plaintiff's allegations here differ from those in *Barbour* only by adding that Meta's actions cause the browser to "simultaneously" duplicate the communication with Motel 6. ECF No. 1, ¶ 37. Merely restating language, however, is insufficient under the plausibility standard. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024). "To plausibly allege that Plaintiff's communications were intercepted while in transit, factual allegations regarding the method, or nature, of interception are required." *Id.*

The *Valenzuela* decision, to which both Plaintiff and the *Heiting* court cite, is illustrative of both what is required and what is missing from Plaintiff's complaint here. There, the plaintiff alleged the defendant intercepted chat communications in "real time." 686 F. Supp. 3d at 978. The court rejected the defendant's arguments that the plaintiff's allegations were merely conclusory, finding the plaintiff "pointed to statements from [the defendant] regarding '[r]eal-time insights' and ['][d]ata from every use event *collected as it happens*." *Id*. (emphasis in original). Here, in contrast, Plaintiff merely adds the word "simultaneously." This does not transform two messages into one that is intercepted. Dismissal of Plaintiff's claim is therefore required.

Plaintiff argues she has alleged violation of the third prong of Section 631(a) because Plaintiff has shown the second prong. As shown above, Plaintiff has failed to allege Meta violated the second prong. Plaintiff has therefore also failed to allege a violation of the third prong.

## IV. PLAINTIFF DOES NOT STATE A CLAIM FOR INVASION OF PRIVACY.

To state an invasion of privacy claim, a plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021). Plaintiff does not deny she voluntarily gave the information at issue to Motel 6. She instead argues the information is intimate because "the information disclosed by Defendant is specifically protected from disclosure under Cal. Civil Code § 53.5." Resp., 17. The alleged information, however, is not "guest record" information because it is not generated when Plaintiff stays but merely when Plaintiff inquiries whether a room is available that meets her needs. Op. Br., 22.

Plaintiff argues this "ignores the allegations in Plaintiff's complaint." Resp., 17 (citing ECF No. 1, ¶ 7, 51). Neither of the paragraphs Plaintiff cites, however, refute this position. Paragraph 7 merely states Plaintiff visited the website to book a room. Paragraph 51 alleges when a customer accessed the website "and began booking their hotel" Motel 6 allegedly transmitted information to Meta. Neither paragraph alleges information Plaintiff entered during the check-out stage or after Plaintiff had booked a room was shared with Meta or anyone else. Paragraph 37 is the only paragraph in which Plaintiff alleges information is sent to Meta. ECF No. 1, ¶ 37. There, Plaintiff alleges an individual enters their trip details on the home page of the Website. *Id*. Next, Plaintiff alleges the browser sends a GET request to Motel 6's server and receives "secret instructions" that cause the browser to duplicate the communication and transmit the duplicated message to Meta along with "additional information." *Id.* Thus, the only information Plaintiff alleges is shared with Meta is information collected when Plaintiff inquired about a room's availability. This is not "guest record" information.

Plaintiff also argues this is "guest record" information because it includes the Facebook ID, which Meta can use to connect class members with their Facebook

profile. Resp., 18. This information does not come from Motel 6, however, but is part of the "additional information" Plaintiff alleges her browser sent to Meta. Moreover, Meta already had this information.

Even if this information qualified as "guest record," Section 53.5 expressly states the law "shall not be construed to prevent a private business . . . from providing business records to a third-party service provider the private business contracts with for business-related services." Cal. Civil Code § 53.5(i). Moreover, the Ninth Circuit has noted "guests lack any privacy interest of their own in the hotel's records . . . because the records belong to the hotel, not the guest, and the records contain information that the guests have voluntarily disclosed to the hotel." *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013), *aff'd sub nom.*, 576 U.S. 409 (2015).

## V. <u>PLAINTIFF FAILS TO ESTABLISH STANDING.</u>

The parties apparently agree whether Plaintiff has shown an Article III standing hinges on whether she has alleged violations of Section 631(a) and an invasion of privacy. Because she has not, Plaintiff has failed to show the required injury and her claim must be dismissed.

## VI. <u>PLAINTIFF'S COMPLAINT MUST BE DISMISED WITH PREJUDICE.</u>

Motel 6's brief establishes Plaintiff's complaint should be dismissed with prejudice because the issues with Plaintiff's complaint are inherent and cannot be cured via amendment. Op. Br., 24. Plaintiff does not respond to this argument.

## VII. <u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiff's claims with prejudice.

Dated: March 19, 2025

HUSCH BLACKWELL LLP

By: /s/ Dustin Taylor

Karen Luong (SBN 246809)
karen.luong@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand, Suite 2850
Los Angeles, CA 90071
213.337.6550 Telephone
213.337.6551 Fax

Dustin L. Taylor (admitted *pro hac vice*)
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
303.749.7200 Telephone
303.749.7272 Facsimile

***Attorneys for Defendant G6 Hospitality LLC***

**PROOF OF SERVICE**

*CYNTHIA SYNDER, v.G6 HOSPITALITY LLC*

At the time of service, I was over 18 years of age and not a party to this action. My business address is 1801 Wewatta Street, Suite 1000, Denver, Colorado 80202.

On March 19, 2025, I served true copies of the following document(s) described as **DEFENDANT G6 HOSPITALITY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL** the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 19, 2025, at Denver, Colorado.

*/s/ Dustin L. Taylor*
DUSTIN L. TAYLOR