UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-02423-AH-(SHKx) | Date | April 14, 2025 |
| Title | *Cynthia Snyder v. G6 Hospitality LLC* | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (DKT. NO. 14) AND DISMISSING PLAINTIFF'S CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Before the Court is Defendant G6 Hospitality LLC's ("Defendant") Motion to Compel Arbitration or, in the alternative, to Dismiss ("Motion"). Mot. to Compel Arbitration, Dkt. No. 14. The matter is fully briefed and the Court held a hearing on April 2, 2025. For the reasons below, the Court DENIES the Motion and DISMISSES Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Defendant is an economy motel chain that owns and operates a website which travelers use to book overnight stays at Motel 6 properties. Compl., Dkt. No. 1, at 1. Plaintiff Cynthia Snyder ("Plaintiff") alleges that, unbeknownst to travelers, Defendant works with Meta, Inc. to intercept confidential communications sent by Plaintiff, including communications that contain sensitive and confidential travel information. *Id.* at 2. On November 8, 2024, Plaintiff filed a class action complaint in this matter alleging violations of the California Invasion of Privacy Act

("CIPA"), Cal. Penal Code § 631 et. seq., and invasion of privacy under California's Constitution. *See generally* Compl. Defendant now moves to compel arbitration, arguing that Plaintiff agreed to arbitrate when she signed up for her Motel 6 account. Mem. in Support of Mot. to Compel Arbitration ("Mem."), Dkt. No. 15, at 8.

According to Defendant, Plaintiff made an account with Motel 6 and, in doing so, agreed to Motel 6's Terms of Use and Privacy Policy. Mem. at 1. Defendant claims that when Plaintiff agreed to these terms she agreed (1) to submit her disputes to arbitration; (2) to the exclusive jurisdiction of the Northern District of Texas for any claim not subject to arbitration; and (3) that she waived her right to participate in a class action litigation and to a jury trial. *Id.* In the alternative, Defendant seeks an order dismissing the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). *Id.* at 2.

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

Under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)).

"To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citation and internal quotation marks omitted). "A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the

fact that an agreement to arbitrate is at issue.'" *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 (2022) (quoting *Kindred Nursing Centers L. P. v. Clark*, 581 U.S. 246, 251 (2017)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030−31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545. A court may consider the allegations contained in the pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

## III. DISCUSSION

### A. Motion to Compel Arbitration

To form an agreement under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023) (citation omitted). "[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Id.* at 515 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

The Ninth Circuit sets forth general principles to evaluate whether "sign-up screens" sufficiently provide notice of assent to terms and conditions:

> First, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Specifically, the font and formatting of that notice must not be "so small that it is barely legible to the naked eye." Second, "while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent ... [c]onsumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'" Third, "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1069–70 (C.D. Cal. 2023) (citing *Berman*, 30 F.4th at 856-58).

Defendant alleges that it "entered into an agreement when Plaintiff agreed to the Terms of Use when Plaintiff created her Motel 6 account." Mem. at 8. To support this argument, Defendant produces a screenshot from the website's sign-up page, which includes the Terms of Use and Privacy Policy hyperlinked in blue at the bottom of the page. *Id.* at 4. Plaintiff, however, provides evidence that challenges which method she used to sign up for her Motel 6 account. Plaintiff cites to two other possible methods of creating a Motel 6 account: during the

checkout process and through Defendant's mobile app.[1] Opp'n, Dkt. No. 19, at 5-6. Notably, screenshots of these alternative sign-up methods do not have any reference or hyperlink to the Terms of Use or Privacy Policy. *Id.* Because these pages provide no notice whatsoever of the Terms of Use or Privacy Policy, the checkout and mobile app sign-up pages do not meet the standard for constructive notice. *See Berman*, 30 F.4th at 856-58.

"[T]he party seeking to compel arbitration…bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). Defendant has failed to provide adequate evidence to establish which version of the sign-up page Plaintiff used when she signed up for her Motel 6 account. Regardless of whether the website's sign-up page that Defendant cites may have provided Plaintiff constructive notice, Defendant has not established by a preponderance of the evidence that Plaintiff signed up using that method, as opposed to using either of the two sign-up pages which provided no notice. Accordingly, Defendant has not met its burden, and the Court cannot conclude that Plaintiff agreed to the Arbitration Agreement.

Thus, the Court DENIES Defendant's Motion to Compel Arbitration.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In the alternative, Defendant argues that Plaintiff's Complaint fails to state a claim under Rule 12(b)(6). Mem. at 2. Plaintiff alleges (1) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631 et. seq., and (2) invasion of privacy under California's Constitution. *See generally* Compl.

California Penal Code Section 631 "makes it unlawful for any person to use a 'machine, instrument, or contrivance' to 'intentionally tap[ ], or make[ ] any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument' or to read, attempt to read, or learn the 'contents or meaning of any

[1] At the hearing on this motion, counsel for Plaintiff suggested that Plaintiff did not remember how she signed up for her account. No declaration or other evidence by Plaintiff has been presented to support this assertion. Defendant points to the allegations in the complaint that refer to Plaintiff's use of the website. Nonetheless, Defendant also presents no evidence of how Plaintiff actually signed up for her account.

message, report, or communication while the same is in transit or passing over any wire, line or cable… without the consent of all parties to the communication.'" *McCoy v. Alphabet, Inc.,* 2021 WL 405816, at *13 (N.D. Cal. Feb. 2, 2021) (citing Cal. Penal Code Code § 631). "To state a claim for invasion of privacy under the California Constitution, a plaintiff must plead: (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is highly offensive." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021). Plaintiff claims that she has a legally protected privacy interest through California Civil Code § 53.5(a), which provides that an "owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a).

First, the parties dispute whether Defendant's "privacy policy sufficiently discloses the behavior about which Plaintiff now complains." *See* Mem. at 16; Opp'n at 10. Plaintiff does not argue that she was not on notice of the privacy policy nor that she did not agree to it. Rather, Plaintiff argues that "Defendant's privacy policy is silent as to the specific disclosures alleged[.]" Opp'n at 11. Plaintiff states that "Defendant fails to cite a single provision in its privacy policy that it shares hotel booking information (i.e. 'guest record' information) with third parties." *Id.*

Defendant's privacy policy, however, extensively explains the disclosures Plaintiff is alleging. The privacy policy specifically mentions Facebook ("Meta") multiple times and instructs users what type of data Defendant collects if the user logs in with their Facebook account. Reply, Dkt. No. 20, at 6; Parek Decl., Ex. B, Dkt. No. 16-2, at 2-4. Under the "Notice to California Residents" section, Defendant discloses that it collects (1) identifiers; (2) commercial information, including "records of purchasing and consuming histories or tendencies"; and (3) internet network activity, including "search history and information regarding consumer's interaction with the website." Reply at 6; Parek Decl., Ex B, at 7-8. Defendant discloses all these categories as having been sold to "marketing providers." Reply at 6; Parek Decl., Ex B, at 8-10. "Several courts have held that similar disclosures constitute adequate notice of tracking activity." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (citing cases).

Plaintiff consented to the privacy policy and "cannot state a claim under the California Invasion of Privacy Act because that statute imposes liability only for interception 'without the consent of all parties.'" *Id.* at 955 (citing Cal. Penal Code § 631(a)).[2] "Plaintiffs' consent also bars… their claim for invasion of privacy under the California Constitution." *Id.*; *see* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it.").

Underlying the parties' dispute is the disagreement regarding whether the information Plaintiff alleges is a "guest record" under California Civil Code § 53.5.[3] Plaintiff alleges that the "dates of the trip, number of guests, username, etc., constituted guest records under California Civil Code § 53.5." Compl. ¶ 82. The Opposition cites to paragraphs 7, 51, and 3 of the Complaint as examples of "guest records." Opp'n at 17-18; *see* Compl. ¶¶ 7, 51, 3. Plaintiff, however, does not explain how anything in those paragraphs constitutes a "name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number" as provided by the statute. Cal. Civ. Code § 53.5(c). Defendant argues that "[w]hat Motel 6 allegedly shares is not 'guest record' information but rather merely what predefined options a user selects when inquiring whether a room is even available." Reply at 6. Regardless of whether Plaintiff's allegations qualify as "guest record" information, the personal information Plaintiff alleges was transmitted is covered by Defendant's privacy policy.

Separately, Plaintiff argues that a Facebook ID constitutes a "guest record," but does not explain how Defendant shares this information with Meta. Opp'n at 18. The only argument that Plaintiff makes as to any identifying unique number is

---

[2] Although Plaintiff claims that whether "a reasonable consumer would believe if they were on notice of the privacy statements at issue cannot be determined at this stage," courts in this Circuit have done so in similar cases. *See Smith v. Facebook, Inc.,* 745 F. App'x 8, 9 (9th Cir. 2018); *Heinz v. Amazon.com, Inc.,* 2024 WL 5304886, at *4 (W.D. Wash. Dec. 18, 2024).

[3] California Civil Code § 53.5 defines a "[g]uest record" as "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c).

at it relates to the Facebook ID, which Plaintiff alleges is tied to the particular search request. *Id.* Although Plaintiff argues that it is the Facebook ID coupled with the particular search that constitutes a "unique identifying number," Plaintiff does not allege or explain that it is not Motel 6 conveying the Facebook ID, or for that matter conveying anything else specified in the statute's list of guest records. *Id.* Rather, Meta itself appears to already have the unique Facebook ID and nothing is being conveyed to Meta by Motel 6 for the purposes of the statute.

Although the Court finds that the allegations as currently pled were consented to by Plaintiff, the Court analyzes the parties' remaining arguments. The parties dispute whether the information transmitted was "content," and whether it was intercepted "in transit."

"Content" is defined as the "intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106 (9th Cir. 2014). "[A] user's request to a search engine for specific information could constitute a communication." *Id.* at 1108. In *Zynga*, the information transmitted included "only basic identification and address information, not a search term or similar communication made by the user, and therefore [did] not constitute the contents of a communication." *Id.* at 1109. Defendant argues that "[b]ecause the information Plaintiff alleges was transmitted to Meta in this case does not include any communication made 'by the user' but rather form fields Motel 6 populated, there is no transmission of 'content' to any third party." Reply at 7. However,, the Complaint alleges that the information was from the user and the specific search was added by the user. *See* Compl. ¶¶ 26-27, 37-38. Accordingly, Plaintiff adequately pleads that the information allegedly transmitted was "content" for the purposes of the statute.

Finally, Defendant argues that Plaintiff's allegations are insufficient to establish interception while "in transit" because Plaintiff "merely adds the word 'simultaneously.'" *See* Reply at 10. The Court, however, agrees with the analysis in *St. Aubin*, which held that "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about

data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder. Still, a CIPA plaintiff must provide fair notice to [d]efendant of how and when she believe[s] the defendant or the conspiring third party intercepts her communications." *Id.* (internal quotations and citation omitted).

Here, Plaintiff's allegations are more than "threadbare recitals." *Id.* (citing *Iqbal*, 556 U.S. at 663). Plaintiff alleges that "when a user communicates with Motel 6's Website, those communications are simultaneously and contemporaneously duplicated and sent to Meta at the same time they are being sent to Motel 6." Compl. ¶ 38; *see St. Aubin*, 2024 WL 4369675, at *6 ("[T]he key to the interception analysis is whether the plaintiff alleges that transmission was simultaneous."). Thus, Plaintiff adequately pleads that the alleged communication was intercepted "in transit."

Nonetheless, the Court finds that Plaintiff, through the privacy policy, consented to the allegations as currently pled by the Complaint. Accordingly, the Court DISMISSES both of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) with leave to amend.[4]

## IV. CONCLUSION

For the forgoing reasons the Court DENIES Defendant's Motion to Compel Arbitration and DISMISSES Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) with leave to amend. Any amended complaint must be filed and served within 14 days.

**IT IS SO ORDERED.**

---

[4] At the hearing on the motion, Plaintiff argued for the first time that *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), requires prior consent. However, insufficient facts are pled in the Complaint to establish such timing of consent. Moreover, the Court declines to consider arguments not raised in the papers.