**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CYNTHIA SNYDER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

G6 HOSPITALITY LLC,

Defendant.

Case No. 5:24-cv-02423-AH-SHK

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date/Time: July 2, 2025 at 1:30 p.m.
Ctrm: 7D
Judge: Hon. Anne Hwang
Amended Complaint filed: April 28, 2025
Trial Date: Not Set

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..................... 1

LEGAL STANDARD ..................... 4

ARGUMENT ..................... 5

I. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ..................... 5

A. The Issue of Whether Plaintiff Consented to Defendant's Disclosure is a Factual Question Not Appropriate for Determination on a Motion to Dismiss ..................... 5

B. Defendant Fails to Establish That Plaintiff Assented to the Terms of its Privacy Policy. ..................... 6

C. The 2021 Privacy Policy Does Not Disclose the Use of the Meta Pixel. ..................... 10

D. The Discovery Rule Tolls the Statute of Limitations. ..................... 14

II. PLAINTIFF STATES A CLAIM for INVASTION OF PRIVACY ..................... 16

CONCLUSION ..................... 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 15

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) .......... 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Calhoun v. Google, LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 13

*Chabolla v. Class Pass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 7, 8

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 5

*E-Fab, Inc. v. Accountants, Inc. Serv.*,
64 Cal. Rptr. 3d 9 (2007) .......... 14

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 13

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 5

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 17

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 15

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 15

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)....................3, 10

*Gomppper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002)....................4

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016)....................5

*Hines v. Wells Fargo Home Mortg., Inc.*,
2015 WL 351818 (E.D. Cal. Jan. 26, 2015)....................14

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................6

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................6, 12

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980)....................14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................14

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....................7, 8

*Lawrence v. Finicity Corp.*,
716 F. Supp. 3d 851 (E.D. Cal. 2024)....................14

*Long v. Provide Com., Inc.*,
200 Cal. Rptr. 3d 117 (2016)....................8

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021)....................5

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014)....................7, 8, 9, 10

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................6, 7

*Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................14

*Sellers v. JustAnswer LLC*,
289 Cal. Rptr. 3d 1 (2021) ........ 3, 8, 10

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 5

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ........ 3, 8

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 13

**RULES**

Fed. R. Civ. P. 8(a)(2) ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 4

## INTRODUCTION

The Court has already determined that Plaintiff, Cynthia Snyder ("Plaintiff"), has adequately alleged that Defendant G6 Hospitality LLC ("Motel 6" or "Defendant") assisted third-party Meta Platforms, Inc. ("Meta") in intercepting the consents of her communications while they were in transit. Order Denying in Part Motion to Dismiss at 8-9 (ECF No. 23) ("Order"). The narrow issue remaining is whether Plaintiff consented to Defendant's disclosure of her personal "guest record" information when she booked a reservation on the Motel 6 website. She did not.

In moving to dismiss Plaintiff's First Amended Complaint (ECF No. 24) ("FAC"), Motel 6 now attempts to shield itself behind a privacy policy that Plaintiff never agreed to. *See* Motion to Dismiss (ECF No. 28) ("Motion"). But Defendant fails to establish that Plaintiff ever agreed to be bound by such policies. At the time of Plaintiff's 2022 reservation, guests were not required to acknowledge—let alone accept—the privacy policy. Instead, the privacy policy was tucked away behind a dropdown link labeled merely "PLEASE READ," separate and apart from the terms guests actually had to affirm. Those terms were misleadingly labeled not as a privacy policy but as "rate and room policies." But Defendant's privacy policy cannot be categorized as a rate policy nor a room policy, and a reasonable consumer would not expect to find a company's privacy policy hidden away under such a heading. Defendant's use of the label "rate and room policies" on its face clearly conveys that the policies contained therein would relate to the room booked and the rate Motel 6 is charging for said room. Rate and room policies typically include information such as the base rate per night, applicable taxes and fees, whether the rate is flexible, prepaid, or non-refundable, the maximum number of guests allowed per room, whether a deposit is required, check-in and check-out times, etc. In short, no reasonable consumer would expect to find a company's privacy policy tucked away and mislabeled as a "rate and room" policy.

As shown in the screenshot below, when booking a reservation on Defendant's Website, consumers must check a box that reads "I agree to the rate and room policies of this reservation:"



I agree to rate and room policies of this reservation. *

Confirm Booking

*** Policies**

**Cancellation Policy**

By checking the cancellation policy box, you acknowledge that this reservation must be cancelled no later than 6:00 PM local motel time on 06-17-2025 to avoid cancellation fee of $59.00 plus any applicable taxes and fees. Any reservation that is not cancelled by this deadline, or if you fail to check-in to the property by the check-out time on the day following your confirmed arrival, will be subject to this cancellation fee. If you are not able to cancel this reservation by the deadline through our website, please contact the reserved Motel 6 or Central Reservations at 1-800-899-9841 prior to this cancellation deadline for assistance with cancelling your reservation

**Motel Policy**

**Special Rate Notice - Valid ID**

Please note: A valid AARP membership, or Military, Commercial Drivers License, or Government ID# is required at check in.

**Total Cost**

Total cost may not include local or state mandated fees that may be applicable during your stay. At the time of check-in, all guests (whether individual or group reservations) must present valid, government issued identification and may be required to present a valid credit, debit or bank card or debit card that matches the name on the confirmed reservation. If the guest is using a bank card or debit card, the card may be authorized for the amount of the stay plus incidentals, and those funds may not be released for up to 2 weeks depending on individual bank policies. G6 Hospitality LLC is not responsible for any overdraft fees incurred.

**PLEASE READ: Privacy Policy and Reservation Policy, and California COVID - 19 Notice**

*See* Declaration of Sarah Westcot ("Westcot Decl."), Ex. A. Defendant intentionally separates its privacy policy from its rate and room policies. And, critically, rather than requiring consumers, like Plaintiff, to agree to the privacy policies, Defendant merely asks them to "PLEASE READ." Consumers must then click on a small dropdown arrow to view the hyperlink needed to access the privacy policy.

Under settled California law, such passive, obscured disclosures are insufficient to manifest assent to form a binding contract. *See, e.g.*, *Godun v. JustAnswer LLC*, 135 F.4th 699, 712 (9th Cir. 2025) (finding no assent to the terms of use); *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 31 (2021) (finding that the language "You can read more about these policies in our Terms of Service" does not suggest the consumer will be bound by those terms); *id*. ("This language does not suggest the consumer will be bound by those terms and instead, the entire scenario requires the user to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.) (internal quotation omitted); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (applying California law) (finding a website's advisement for users to "Please review" terms that were located below, on a submerged page, "tended to conceal the fact that [downloading the software] was an express acceptance of the [] rules and regulations"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (finding even strongly implicit advisement, instead of explicit advisement, of terms and conditions in a sign-in wrap insufficient notice to form a contract). This Court should find the same.

Put simply, Defendant fails to establish that Plaintiff ever agreed to be bound by their privacy policies. Even if Plaintiff had somehow agreed to the policy (she did not), it still would not excuse Motel 6's conduct in disclosing guest record information as the version of Defendant's privacy policy in effect at the time of Plaintiff's 2022 booking *made no mention of the Meta Pixel or the transmission of personally identifiable information to Meta.* Worse, it actively misled guests by

insinuating that Motel 6 did not share personal data. These material omissions and contradictions confirm that Plaintiff never gave meaningful, informed consent. Accordingly, even if Plaintiff was aware of Defendant's 2021 privacy policy, she would not have been aware of and could not have consented to her "guest record" information being disclosed to Meta.

For these reasons, and those discussed more thoroughly below, Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

#### A. The Issue of Whether Plaintiff Consented to Defendant's Disclosure is a Factual Question Not Appropriate for Determination on a Motion to Dismiss

As a preliminary matter, what a reasonable consumer would believe if they were on notice of the privacy statements at issue cannot be determined at this stage. *See*, *e.g.*, *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual questions, the Court need not reach it at the motion to dismiss stage."); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the . . . Terms of Use or . . . Privacy Policy, that by using the . . . website they were consenting to the disclosure of their personally identifiable information . . . is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ("Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the

information that then could or would be collected by Meta.”).

Importantly, “at the motion to dismiss stage, the Court must give Plaintiffs the benefit of all reasonable inferences,” and “where . . . ‘the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant’s] favor.’” *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)) (emphasis added). Here, there is at least a question of fact as to whether Plaintiff consented to the privacy policy and whether the policies did indeed disclose (and thus sufficed as consent for) the wiretapping.

### B. <u>Defendant Fails to Establish That Plaintiff Assented to the Terms of its Privacy Policy.</u>

Defendant argues that all of Plaintiff's claims fail because she consented to the privacy practices outlined in its privacy policy when she booked overnight stays on the Website. Motion at 6. Defendant relies on the fact that Plaintiff “was required to affirmatively check a box stating, ‘I agree to the ***rate and room policies*** of this reservation.’” *Id.* at 7 (emphasis added). However, this argument fails, as Defendant’s privacy policy is neither a rate policy nor a room policy. As such, Defendant fails to establish that Plaintiff agreed to be bound by its terms.

California law requires constructive notice for consumers to be bound by contractual terms. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) (“To form a contract under California . . . law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent.”). To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, an enforceable contract will only be found based on constructive notice, unless the website can show that a consumer has actual knowledge of the agreement. Defendant cannot prove either. *See Berman*, 30 F.4th at 856. For internet contracts,

courts distinguish between "clickwrap" agreements and "browsewrap" agreements. Clickwrap agreements "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman*, 30 F.4th at 856. Conversely, browsewrap agreements "offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* "A sign-in wrap lives somewhere in the middle [between a 'browsewrap' agreement and a 'clickwrap' agreement]: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. Class Pass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (citing *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). Courts consistently hold that browsewrap agreements are unenforceable because they fail to provide constructive notice to consumers. *Oberstein*, 60 F.4th at 513 ("Courts are generally reluctant to enforce [browsewrap] agreements because they often leave users unaware that contractual terms were even offered[.]"). As explained by the Ninth Circuit,

> [I]n keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, ***even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice***. . . . [T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014).

Importantly, regardless of the type of agreement (clickwrap, browsewrap, sign-in wrap etc. . .), the website provider bears the burden of establishing that "the

contractual terms were presented to the consumer in a manner that made it apparent the consumer was assenting to **those very terms** when checking a box or clicking on a button" to establish mutual assent and not a different set of terms. *Sellers*, 289 Cal. Rptr. 3d at 13 (citing *Nguyen*, 763 F.3d at 1175) (emphasis added).

Under California law, establishing an agreement to internet terms is "fact-intensive" and is informed by the "totality of the circumstances." *Berman*, 30 F.4th at 856. "Notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it." *Id.* at 856 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (applying California law)). In *Chabolla*, the Ninth Circuit explained that when determining whether notice is reasonably conspicuous, courts should consider "the 'context of the transaction,' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design,' [to] inform whether a website provides reasonably conspicuous notice of the terms of an agreement." *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh*, 100 F.4th at 1014); *cf. Long v. Provide Com., Inc.*, 200 Cal. Rptr. 3d 117, 125–26 (2016) ("[T]he Terms of Use hyperlinks—their placement, color, size and other qualities relative to the . . . Web site's overall design—are simply too inconspicuous to meet that standard."). The webpage must take steps "to capture the user's attention and secure her assent," for the terms to be reasonably conspicuous. *Berman*, 30 F.4th at 857.

In examining the visual aspects of the Website, the privacy policy is not reasonably conspicuous. First, the webpage requires users to check a box indicating they "agree to the rate and room policies of this reservation" when booking a reservation online. *See* Bhardwaj Decl. at 4. The information below that includes a section labeled "* Policies," which lists the Cancellation Policy, Motel Policy, Special Rate Notice, and Total Cost underneath it. *See id.* Further below that is a heading labeled as "PLEASE READ: Privacy Policy and Reservation Policy, and

California COVID-19 Notice," and nested below this is the "Motel 6 Privacy Policy." *See id.* The language of the checkbox does not put users on notice that the privacy policy is included in the "rate and room policies." As noted by *Nguyen*, Motel 6 must provide "an explicit textual notice" and that notice must "explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Nguyen*, 763 F.3d at 857. For example, in *Berman*, the court held that a notice saying "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy[,]" could not create an enforceable contract. 30 F.4th at 849. *Berman* held that the unambiguous manifestation or assent element requires website owners to add explicit "language such as 'By clicking the Continue>> button, you agree to the Terms & Conditions." *Id.* at 848 (emphasis added). Here, the language contained in the notice is ambiguous at best, because Motel 6 does not specify anywhere on its website that the "rate and room policies" are meant to encompass its online privacy policy. The "rate and room policies" include a cancellation policy, motel policy, rate notice, and total cost section, all of which are directly related to and within the context of a prospective guest's "rate and room" for their reservation. However, the plain language of the disclosure does not indicate that it covers more than those policies specifically related to the consumer's stay.

Second, the privacy policy is not immediately apparent to users on the Website, being nested underneath the "PLEASE READ" label, which must be clicked to expand and reveal the privacy policy. *See* Bhardwaj Decl. at 4. Further, the privacy policy is not actually contained on the booking page but rather is present in the form of a hyperlink that sends users to a different page containing the privacy policy. *See id.* It is not immediately apparent that the policies nested underneath are hyperlinks, as they are in the same bold font as the preceding headings, and not a different color or underlined. *See Berman*, 30 F.4th at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a

reasonably prudent user that a clickable link exists."); *Nguyen*, 763 F.3d at 1179 ("Consumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to "ferret out hyperlinks."). A consumer would have to intentionally hover over the "View the Motel 6 Privacy Policy" heading to discover the hyperlink and be directed to the policy.

Third, even assuming, *arguendo*, that the privacy policy was presented in a conspicuous manner (it was not), such notice would still be insufficient under California law, as Defendant merely advised consumers to "PLEASE READ" the policies included. *See Berman*, 30 F.4th at 856. Such passive language would not constitute an agreement to be bound as required by California law. *Id; see also Godun*, 135 F.4th at 712 (finding no assent to the terms of use); *Sellers*, 289 Cal. Rptr. 3d at 31 (finding that the language "You can read more about these policies in our Terms of Service" does not suggest the consumer will be bound by those terms).

Viewed in totality, a reasonably prudent internet user would not have believed they were unambiguously manifesting assent to the privacy policy by agreeing to the "rate and room polices" of the reservation.

### C. **<u>The 2021 Privacy Policy Does Not Disclose the Use of the Meta Pixel.</u>**

Even if the Court does find that agreeing to the rate and room polices was sufficient to provide constructive notice to consumers of the privacy policy (it was not), the terms contained within Defendant's 2021 privacy policy still fail to disclose Defendant's privacy practices. Defendant's 2021 privacy policy is silent as to the *specific* disclosures alleged herein. Defendant concedes as much, stating that "the 2021 Privacy Policy is structured differently and does not specifically mention Meta." Motion at 8. Indeed, the 2021 policy does not disclose that guests' information is sent to third parties, such as Facebook, or that the information that is sent to third parties includes identifying information. According to the 2021 privacy policy, Defendant represents that "we do not use cookies to gather any personal

information about you **apart from what you voluntarily provide us in your dealings with us**." ECF No. 29-1, at 5 (emphasis added). However, guests do not voluntarily provide their Facebook ID. Defendant, using the Meta Pixel code it installed on its Website, obtains this information, which is then attached to each consumer's booking information. Defendant assists Meta in intercepting this information in order to identify consumers for advertising purposes. Defendant also tries to claim that its use of "persistent cookies" was disclosed to users. Motion at 9. However, this ignores the fact that the policy expressly represents that any personal information collected via cookies is limited to what guests voluntarily provide to Defendant. ECF No. 29-1, at 5. It does not matter whether the use of cookies was disclosed if the policy explicitly represents that the information that is collected is limited. If a consumer were to use the Website and voluntarily provide this identifying information, then that consumer would be on notice that it could be collected via cookies. However, Plaintiff and Class Members never voluntarily provided their Facebook ID to Defendant, and as such could not be on notice that Defendant would use that information to identify their activity to Meta. Nevertheless, Defendant still disclosed this unique identifying number, in combination with reservation-specific guest data, to Meta, in violation of California law. FAC, ¶ 65.

Additionally, Defendant argues that the 2021 privacy policy discloses the collection and disclosure of "social media account information." Motion at 8. To be clear, under the "Third-Party Media" section, the privacy policy does disclose that the site "may contain plug-ins and other features that integrate third-party media platforms into our Sites." ECF No. 29-1, at 4. However, the policy continues, saying:

> You will be able to activate them manually. If you do so, the third parties who operate these platforms may be able to identify you, they may be able to determine when and how you use this Site, and they may link and

store this information with your social media profile.

*Id.*

The policy clearly represents to guests that for social media platforms to receive this information, they must be activated manually. Therefore, a reasonable consumer would not understand that information linking them to their Facebook account is being sent by Defendant when the consumer does not manually activate these features.

Additionally, under the "How We Collect and Use Personal Information" section, the 2021 policy also states that Defendant "do[es] not sell your personal information." *Id.* at 6. Defendant goes even further and represents to California residents, like Plaintiff and Class Members, that "[w]e do not and will not sell your personal information" under the "California Resident Rights" section. *Id.* at 9. These representations further bolster guests' belief that such information was not being sold or intercepted. Conversely, in the current privacy policy, Defendant describes its same use of cookies, and other tracking technologies for advertising purposes, as involving the sale of personal data. *Compare Id.* at 6 ("We do not sell your personal information.") *with* ECF No. 29-2, at 3 ("We use cookies and other tracking technologies to display advertisements about our products to you on nonaffiliated websites, applications, and online services. . . . When we engage in those activities, we sell personal data (i.e., information from cookies) to third-party advertisers and analytics companies."). Defendant's decision to update the language of the policy so extensively demonstrates its realization of this contradiction, and, seeing the need to acknowledge its actions and properly inform guests of its practices with guest record information, updated the privacy policy to its current form. At the very least, the contradictory and misleading terms in the 2021 privacy policy create ambiguity that, at this stage, must be resolved in Plaintiff's favor. *Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 823 ("[W]here . . . 'the contract language at issue is reasonably

susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor.'").

The 2021 privacy policy does not "explicitly notify" users that "guest record" information is shared with and sold to third parties, such as Meta. "In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue." *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). This is crucial, as such information is specifically protected by California law. Here, Defendant disclosed Plaintiff's "guest record" information to Meta in violation of California law, because Meta used the protected information it intercepted for its own marketing purposes. *See* FAC ¶¶ 40, 49. Plaintiff did not authorize Defendant nor Meta to monetize her protected "guest record" information in this manner. Based on the privacy policy in effect during Plaintiff's 2022 booking, she would have no way of knowing that her protected "guest record" information was being disclosed to third parties in violation of California law, as Defendant represented that no personal data, let alone "guest record" information was being sold or shared. Such allegations are more than sufficient at this stage. *See*, *e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.") (cleaned up); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (finding allegations that "Plaintiff's Complaint states that she 'did not give consent—written or otherwise—to Defendant to collect voiceprints' and that she was enrolled in the

MyVoice program as early as 2017" sufficient at the pleadings).

Defendant also argues that Plaintiff "only alleges information was sent to Meta in 2024/2025 when Plaintiff made the inquiry and reservation shown in figures one through six." Motion at 7. However, these figures clearly indicate that they were prepared by Plaintiff's counsel in 2024, not by Plaintiff. *See* FAC, Figures 1–6. Plaintiff's counsel provided these screenshots to illustrate to the Court what the booking process looks like for a typical guest on Defendant's Website, as well as the interceptions that were taking place. Notably, Defendant does not claim that the Meta Pixel was disabled on the Website in 2022 nor does it provide any authority that would limit Plaintiff's allegations to after the date of her investigation.

### D. The Discovery Rule Tolls the Statute of Limitations.

Defendant argues that the delayed discovery doctrine does not apply to Plaintiff's claims. Motion at 9-10. Defendant's argument is irrelevant at this stage of litigation. *See Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025) (Holding that "the question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discover rule is a question of fact unless the evidence can support only one reasonable conclusion." (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023)) (internal quotations omitted).

Whether Plaintiff is entitled to the delayed discovery doctrine is a question of fact determined outside of the pleadings. *E-Fab, Inc. v. Accountants, Inc. Serv.*, 64 Cal. Rptr. 3d 9, 17 (2007); *see also Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 892 (E.D. Cal. 2024). Moreover, Defendant may only raise a time-barred claim on a motion to dismiss "if the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Hines v. Wells Fargo Home Mortg., Inc.*, 2015 WL 351818, at *2 (E.D. Cal. Jan. 26, 2015) (a court may only grant a motion to dismiss if "it is clear from the face

of the complaint that the statute has run and that no tolling is possible"); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) (holding that "dismissal of Plaintiff's claims as time-barred would be premature," where "Plaintiff allege[d] that he did not know and had no way of knowing that his personally identifiable information … was intercepted and unlawfully disclosed to Meta … because Defendant kept this secret"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) ("Plaintiffs' delayed discovery argument poses another barrier to dismissal where Defendants secretly incorporated Meta Pixel into their Web Properties . . .) (internal quotations omitted).

Should the Court decide to address the timeliness of Plaintiff's claims at this stage, Plaintiff has adequately alleged facts to support the application of the delayed discovery rule. To properly assert the delayed discovery doctrine, Plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal citations omitted). However, Plaintiff's duty to investigate is only triggered when the plaintiff has reason to suspect an injury. *Id*. Defendant argues that Plaintiff "had inquiry notice of the privacy policy at the time she booked her first reservation on the Website;" thus, Plaintiff should have been suspect of injury. Motion at 10. Defendant is mistaken. Rather, "at the time of Plaintiff's first booking on Defendant's website in 2022, Defendant made no disclosure regarding the use of the Meta Pixel on its website or the fact that 'guest information' was being disclosed to an unauthorized third party." FAC ¶ 77. Resultingly, "the earliest that Plaintiff … acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of the Plaintiff's initial complaint in this matter," on or around November 2024. FAC ¶¶ 75, 77. The 2021 privacy policy that Plaintiff relied on when making her first booking in 2022 lacked information regarding disclosures to third parties such as Facebook. Plaintiff could not have reasonably

known, at the time, that Defendant surreptitiously installed that Meta Pixel on its Website, which allowed Meta to intercept Plaintiff's guest record information and her Facebook ID.

Therefore, the Court should find Plaintiff sufficiently alleged the delayed discovery rule applies to her claims.

## II. PLAINTIFF STATES A CLAIM FOR INVASTION OF PRIVACY

Defendant argues "as this Court identified in its order, Plaintiff's consent to the disclosure of her information bars her claim for invasion of privacy." Motion at 10. This argument is baseless. Defendant refers to the Court's decision, made prior to the FAC, which does not contain allegations related to her 2022 booking. Moreover, Plaintiff disputes that she agreed to be bound by Defendant's privacy policy, a fact which was not previously addressed by the Court.

Plaintiff argues that "at all relevant times, Motel 6 aided, agreed with, and conspired with Meta to track and intercept Plaintiff's and Class Members' internet communications while [booking her first stay on Defendant's Website in 2022]. These communications were intercepted without the authorization and consent of Plaintiff and Class Members." FAC ¶¶ 7, 92. As explained above, Plaintiff did not consent to Defendant's actions regarding the Meta Pixel when she made her first booking in 2022.

Defendant fails to assert a substantiated argument against Plaintiff's invasion of privacy claim. Defendant brushes off Plaintiff's claim by arguing that Plaintiff's Facebook ID was something Meta already possessed. Motion at 10. But that argument ignores Plaintiff's claims. Plaintiff does not bring this action because Meta created/utilized her Facebook ID. Instead, Plaintiff argues that Defendant failed to make proper disclosures regarding its use of the Meta Pixel in its 2021 Privacy Policy. Resultingly, "When [Plaintiff] accessed [Defendant's Website] and began booking their hotel, Defendant transmitted information relating to the specific customer's trip to Meta … Each time Motel 6 sent this activity data, it also disclosed

customers' personally identifiable information, including their Facebook ID." FAC ¶ 52-53. Such conduct violates California law.

Accordingly, Plaintiff states a viable invasion of privacy claim under the California Constitution.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, if the Motion is granted in any respect, Plaintiff should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: June 18, 2025

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Sarah N. Westcot</u>*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Cynthia Snyder certifies that this brief contains 5,236 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Sarah N. Westcot*
Sarah N. Westcot