Karen Luong (SBN 246809)
karen.luong@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand, Suite 2850
Los Angeles, CA 90071
213.337.6550 Telephone
213.337.6551 Fax

Dustin L. Taylor (admitted *pro hac vice*)
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
303.749.7200 Telephone
303.749.7272 Facsimile

***Attorneys for Defendant***
***G6 Hospitality LLC***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA SYNDER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>G6 HOSPITALITY LLC,<br><br>Defendant. | Case No: 5:24-cv-02423-AH-SHK<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: August 13, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Anne Hwang |

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 3

I. PLAINTIFF HAS FAILED TO STATE A WIRETAPPING CLAIM UNDER SECTION 631(a). ........................................................................... 3

A. Motel 6 Has Shown a Reasonable Person Would Understand They Agreed to the Privacy Policy by Confirming Their Booking. ........................... 3

B. Motel 6 Privacy Policies Disclose the Alleged Tracking Activities. ............. 6

C. Plaintiff's Claims Are Barred by the Statute of Limitations. ......................... 9

II. PLAINTIFF'S INTRUSION UPON SECLUSION CLAIM MUST BE DISMISSED ........................................................................................ 10

CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Berman v. Freedom Financial Network, LLC,*
30 F.4th 849 (9th Cir. 2022) .......... 4

*Calhoun v. Google, LLC,*
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 9

*Dean v. OKCoin USA Inc.*,
No. 24-CV-01331-PCP, 2024 WL 3522207 (N.D. Cal. July 23, 2024) .......... 5

*E-Fab, Inc. v. Accountants, Inc. Serv.*,
64 Cal. Rptr. 3d 9 (2007) .......... 10

*Kirkham v. TaxAct Inc.*,
No. 24-1515, 2025 WL 914307 (3d Cir. Mar. 26, 2025) .......... 5

*Lakes v. Ubisoft, Inc.*,
No. 24-cv-06943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......... 9

*Recursion Software, Inc. v. Interactive Intel., Inc.*,
425 F. Supp. 2d 756 (N.D. Tex. 2006) .......... 5

*Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al.*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 10

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 3, 6, 8, 11

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 3

*Washington v. Flixbus, Inc.*,
No. 3:25-cv-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) .......... 9

## Statutes

Cal. Civ. Code § 3515 .......... 11

## INTRODUCTION

On April 14, this Court dismissed Plaintiff's wiretapping (Section 631(a)) and intrusion upon seclusion claims after finding Defendant G6 Hospitality LLC's ("Motel 6") privacy policy that was in effect when Plaintiff allegedly used the website in August 2024 "extensively explains the disclosures Plaintiff is alleging." ECF No. 23 at 6. The Court specifically noted the privacy policy both disclosed that Motel 6 collected "(1) identifiers; (2) commercial information, including 'records of purchasing and consuming histories or tendencies'; and (3) internet network activity, including 'search history and information regarding consumer's interaction with the website,'" *and* that Motel 6 also disclosed "all these categories as having been sold to "'marketing providers.'" *Id.*

In her amended complaint, Plaintiff now alleges she first visited www.motel6.com (the "Website") in 2022. Relying on the operation of the current version of the Website, Plaintiff again alleges Motel 6 violated Section 631(a)'s wiretapping provision and intruded upon Plaintiff's seclusion by transmitting actions Plaintiff took on the Website. In her Opposition (ECF No. 31 ("Opp.")), Plaintiff argues she did not read the privacy policy in effect (the "2021 Privacy Policy") when she allegedly visited the Website sometime in 2022[1] and, had she done so, that the 2021 Privacy Policy did not explain the disclosure Plaintiff alleges. Neither is true.

The Privacy Policy appeared on a screen before Plaintiff was allowed to continue with her booking. Plaintiff was required to check a box to signify she had "agree[d] to [the] rate and room policies for this reservation.*" ECF No. 29 at ¶¶ 7, 9. The asterisk was mirrored by another asterisk next to the word "Policies," below which several policies including the Privacy Policy were listed. To argue she did not read the 2021 Privacy Policy, Plaintiff argues the Privacy Policy is not a "rate and

[1] Plaintiff did not, and does not, argue she did not read the current version of the privacy policy available on the Motel 6 website.

room policy" and did not relate to her reservation. This argument contradicts Plaintiff's case theory, which asks the Court to find Motel 6's disclosures violate California law about disclosing an individual's "guest record." The Privacy Policy cannot be unrelated to Plaintiff's reservation and also potentially disclose that Motel 6 shares information about Plaintiff's reservation with third parties.

Even if not part of the clickwrap agreement, the Privacy Policy was conspicuously disclosed on the same page as what Plaintiff contends are the "rate and room policies", which Plaintiff affirmatively represented she had read. A reasonable person would have read the Privacy Policy after reading the other rate and room policies: especially where, as here, Plaintiff contends the privacy policy contains information about what information was shared with third parties about Plaintiff's lodging.

Plaintiff also argues that even if she had read the 2021 Privacy Policy, it did not explain the disclosures Plaintiff alleges. The 2021 Privacy Policy discloses, however, that Motel 6 collects a user's "identifiers such as real name . . . unique personal identifier, [or] online identifier," "purchasing or use histories and tendencies," and "browsing history . . . and information regarding a resident's interaction with an internet website." ECF No. 29-1 at 6–7. For each piece of information, the 2021 Privacy Policy discloses the information is disclosed to third parties "that provide G6 with marketing and advertising services . . . ." *Id.*

Furthermore, it is apparent from the face of the Complaint that Plaintiff visited the Website in 2022 but waited approximately two years to file a complaint; twice as long as allowed under the one-year statute of limitations CIPA provides. Plaintiff was on inquiry notice due to the disclosures of the 2021 Privacy Policy and any advertising she would have seen as a result of the alleged behavior. Plaintiff's claims are therefore untimely.

Plaintiff's amended complaint is merely another attempt to exploit the current language of Section 631(a) before it can be clarified via pending legislation Senate

Bill 690, which is now set as a two-year bill. The Court should again dismiss Plaintiff's claims. Because these errors could not be corrected via amendment and are time barred, Motel 6 requests dismissal be with prejudice.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO STATE A WIRETAPPING CLAIM UNDER SECTION 631(A).

#### A. Motel 6 Has Shown a Reasonable Person Would Understand They Agreed to the Privacy Policy by Confirming Their Booking.

Plaintiff agreed to the Motel 6 Privacy Policy and the other rate and room policies when she made her reservation in 2022 and when she made subsequent reservations.[2] Before being able to "Confirm Booking," Plaintiff was required to check a box that states "I agree to rate and room policies of this reservation.*". ECF No. 29 at ¶¶ 7, 9. The asterisk in this sentence led directly to the disclosed "*Policies," located immediately below the "Confirm Booking" button. *Id.* The link to the "Motel 6 Privacy Policy" and the other hyperlinks are in bold and in a larger font than the surrounding text. *Id.* at ¶ 10.

"In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018).

Although Plaintiff did not previously contend she did not agree to the Privacy Policy currently in effect, Plaintiff now argues she did not agree to the 2021 Privacy Policy that was in place when Plaintiff booked a room in 2022. Plaintiff first argues

---

[2] Although Plaintiff first argues it is improper for this Court to determine whether Plaintiff consented to the alleged behavior at the motion to dismiss stage, Plaintiff's argument directly contradicts both this Court's prior order and the Ninth Circuit's precedent. ECF No. 23 at 6 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) (collecting cases).

the Privacy Policy is not reasonably conspicuous and the language of the checkbox does not put users on notice that the privacy policy is included in the "rate and room policies." Opp. at 8–9. To make this argument, however, Plaintiff reads the "rate and room policies" to include everything *other than* the Privacy Policy. Before being able to "Confirm Booking," Plaintiff was required to check that she agreed to rate and room policies of this reservation. ECF 29 at ¶ 9. Those policies were identified by an asterisk and included the "Cancellation Policy," "Motel Policy," "Special Rate Notice – Valid ID", "Total Cost" notice, "Motel 6 Privacy Policy," "Motel 6 Reservation Policy" and "COVID-19 Guest Disclosure Notice."

Plaintiff argues only the first four are "directly related to and within the context of a prospective guest's 'rate and room' for their reservation." Opp. at 9. Plaintiff offers no reason why a Reservation Policy or COVID-19 Guest Disclosure Notice would not be related to a prospective guest's room. Neither does Plaintiff offer any reason why the Privacy Policy is unrelated to the reservation. Indeed, Plaintiff alleges a consumer would look to such a document to discern what information Motel 6 is sharing about the consumer's stay with third parties. Plaintiff argues the language is ambiguous because "Motel 6 does not specify anywhere on its website that the 'rate and room policies' are meant to encompass its online privacy policy," Opp. at 9, but that is exactly what is specified on the checkout screen. All the policies identified below the "Policies*" header are included within the "rate and room policies."

Plaintiff's reliance on *Berman* is misplaced. In that case, the website featured a large green "continue" button and a "comparatively large box" displaying the user's zip code. *Berman v. Freedom Financial Network, LLC,* 30 F.4th 849, 854 (9th Cir. 2022). Sandwiched between those two displays "were two lines of text in a tiny gray font, which stated: 'I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy.'" *Id*. at 854. The *Berman* court found the webpages did not indicate to the user that action would constitute assent to the terms and conditions. *Id*. at 858. Here, in contrast, the Motel 6 webpage requires the users

assent by checking the box next to the phrase "I agree to rate and room policies of this reservation.*" ECF No. 29 at ¶ 9. Because users cannot proceed with the reservation unless they check the box and agree, Motel 6 has shown Plaintiff agreed to the terms. *Kirkham v. TaxAct Inc.*, No. 24-1515, 2025 WL 914307, at *4 (3d Cir. Mar. 26, 2025) (finding "the Terms provide for mutual assent" whether characterized as a clickwrap or browsewrap because "users cannot complete e-filing without acknowledging the terms and conditions."); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006) (finding the user agreed to the terms of a license agreement in part because "[w]ithout accepting the terms of the license, installation [was] impossible.");

Plaintiff's other attempts to argue the privacy policy is not reasonably conspicuous also fail. Although the Privacy Policy is a hyperlink, rather than included verbatim, courts hold such hyperlinks are permissive. *Dean v. OKCoin USA Inc.*, No. 24-CV-01331-PCP, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024). That the Privacy Policy hyperlink is in bold and larger than the non-hyperlink text is sufficient to place Plaintiff and others on notice. *Id.* Here, Plaintiff knew she was entering into a continuing relationship with Motel 6 rather than a "typical one-and-done" transaction. *Id.* Plaintiff had booked a room for a future date and even created a rewards account with Motel 6.

Plaintiff also incorrectly argues the notice would be insufficient because Motel 6 "merely advised consumers to 'PLEASE READ' the policies included." Opp. at 10. This argument assumes incorrectly that the Motel 6 Privacy Policy, Motel 6 Reservation Policy and COVID-19 Guest Disclosure Notice are not part of the rate and room policies to which Plaintiff agreed before she was able to complete a check-out. Motel 6 does not "merely advise" consumers to read the Privacy Policy, it requires consumers to check a box signifying they agree to all the rate and room policies, which includes the Privacy Policy.

Motel 6 has established that the above collectively demonstrates what a

reasonable person understood by agreeing to the rate and room policies that the person was agreeing to the Motel 6 Privacy Policy.

**B. Motel 6 Privacy Policies Disclose the Alleged Tracking Activities.**

The Court's April 14 order found "Defendant's privacy policy . . . extensively explains the disclosures Plaintiff is alleging." ECF No. 23 at 6. The Court specifically found:

> Under the "Notice to California Residents" section, Defendant discloses that it collects (1) identifiers; (2) commercial information, including "records of purchasing and consuming histories or tendencies"; and (3) internet network activity, including "search history and information regarding consumer's interaction with the website." . . . Defendant discloses all these categories as having been sold to "marketing providers."

*Id.* (internal citations omitted). The Court then concluded "'[s]everal courts have held similar disclosures constitute adequate notice of tracking activity.'" *Id.* (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d at 954 (citing cases).

To avoid this ruling, Plaintiff now alleges she accessed the Website in 2022 when a different version of the privacy policy was in place and *that* version of the privacy policy did not adequately disclose the alleged behavior. Although the two documents are not identical, the 2021 Privacy Policy also discloses Motel 6 collects and shares with third-party marketers the same identifiers, commercial information, and internet network activity the Court previously found sufficient to place Plaintiff on notice. Specifically, the 2021 Privacy Policy discloses Motel 6 collects the following categories of personal information:

- Name, Contact Info and other Identifiers, identifiers such as real name . . . unique personal identifier, online identifier, . . . or other similar identifiers. Ex. A to ECF No. 29-1 at 6.
- Purchased History and Tendencies: commercial information including . . . products or services purchased, obtained, or considered, or other purchasing

or use histories and tendencies. *Id.* at 7.

- Usage Data: internet or other electronic network activity information, including but not limited to, browsing history, clickstream data, search history, and information regarding a resident's interaction with an internet website, application or advertisement, including access logs and other activity information related to your use of any company websites, application or other online services. *Id.* at 8.

For each piece of information, the 2021 Privacy Policy explains the information is disclosed for the "marketing" business purpose, which includes disclosure to third parties "that provide G6 with marketing and advertising services . . . ." *Id.* Plaintiff's claim that "the 2021 policy does not disclose that guests' information is sent to third parties, such as Facebook, or that the information that is sent to third parties includes identifying information," Opp. at 10, is therefore false.

Plaintiff's attempts to contradict these disclosures fail. Plaintiff argues the 2021 Privacy Policy does not disclose that Motel 6 shares a user's Facebook ID because "guests do not voluntarily provide their Facebook ID." Opp. at 11. Plaintiff's argument focuses on isolated language about cookies under the heading "third-party media," which pertains to "plug-ins and other features that integrated third-party media platforms into our Sites." *See* ECF No. 29-1 at 4. In a separate section, however, Motel 6 explains "How We Collect and Use Personal Information" and discloses Motel 6 collects "identifiers such as . . . unique personal identifier [and] online identifier" and shares that information with third-party business that provide G6 with marketing and advertising services. *Id.* at 6–7. Moreover, although Plaintiff argues she "could not be on notice that Defendant would use [her Facebook ID] to identify [Plaintiff's] activity to Meta," Opp. at 11, this ignores that the Facebook ID is a Meta/Facebook creation. Plaintiff alleges the Facebook ID is only sent if a user has a Facebook account and is either currently logged in or has recently logged out of Facebook when she visits the Website. ECF No. 24 at ¶¶ 54–56. When Plaintiff

created a Facebook account, she agreed to several Facebook policies that disclosed the very thing about which Plaintiff alleges she was never placed on notice. *Smith*, 262 F.Supp.3d at 953-954 ("Yet Facebook's Data Policy discloses the precise conduct at issue in this case: '*We collect information* when you visit or *use third-party websites* . . . .'") (emphasis in original)). Furthermore, the 2021 Privacy Policy explains Motel 6 collects and shares users "online identifiers," which would include the Facebook ID.

Neither do statements in the 2021 Privacy Policy that Motel 6 "do[es] not sell your personal information" lead users to believe "such information was not being sold or intercepted" while the statements in the current privacy policy now state that same activity constitutes a sale. Opp. at 12. Plaintiff's argument ignores that in 2021 there was ambiguity whether the use of third-party cookies constituted a sale under the CCPA. The draft regulations of the California Privacy Protection Agency (CPPA), published in 2022-2023, clarified use of third-party advertising cookies can constitute a sale of information. Regardless of whether it was termed a "sale," the 2021 Privacy Policy disclosed this information was being sent to third party marketing entities.

Plaintiff also argues the 2021 Privacy Policy cannot establish consent because it does not "'explicitly notify' users that 'guest record' information is shared with and sold to third parties, such as Meta." Opp. at 13 (citing *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). Plaintiff's reliance on *Calhoun* is misplaced. As other courts have found, "[u]nlike in *Calhoun* . . . only the Privacy Policy is at issue here and a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties. *Calhoun* . . . do[es] not require a more granular disclosure than the Defendant's disclosure." *Lakes v. Ubisoft, Inc.*, No. 24-cv-06943-TLT, 2025 WL 1036639, at *6 (N.D. Cal. Apr. 2, 2025); *see, also Washington v. Flixbus, Inc.*, No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025). In *Flixbus*, the plaintiff argued the privacy policy was insufficient to establish consent because "there is no provision in

Defendant's terms that explicitly notifies users that their personal information or travel details would be disclosed to third parties." Rejecting this argument, the court found "Defendant's Privacy Policy and Terms and Conditions explicitly notify users of the data practices at issue by disclosing the use of cookies and tracking pixels to track certain data and disclose that data to Defendant's business partners, including marketing partners. Accordingly, a user's acceptance of Defendant's terms constitutes actual consent to the data practices Plaintiff challenges." *Id.*

**C. Plaintiff's Claims Are Barred by the Statute of Limitations.**

This Court can consider and hold Plaintiff's claims are untimely. Plaintiff relies on the Central District of California's *Saedi* decision to argue "Defendant's argument is irrelevant at this stage of litigation." Opp. at 14 (citing *Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al.*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025)). In that decision, however, **the court dismissed the plaintiff's CIPA claim as untimely**. *Id.* at *10 ("Plaintiff's recognition that the Website collected her information is sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff had inquiry notice upon visiting the Website.").

Although "'[r]esolution of the statute of limitations is *normally* a question of fact, . . . whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law." *E-Fab, Inc. v. Accountants, Inc. Serv.*, 64 Cal. Rptr. 3d 9, 17 (2007) (citations omitted, emphasis added). Plaintiff admits a defendant can raise a time-barred claim if the running of the statute is apparent on the face of the complaint. Opp. at 14.

Here, Plaintiff alleges she first visited the website in 2022 but did not file the lawsuit until November 2024; well beyond the one-year statute of limitations in CIPA. The running of the statute is therefore apparent on the face of the complaint. *Saedi*, 2025 WL 1141168 at *10. Plaintiff argues she was not on inquiry notice because at the time of her first booking on the Website in 2022, "Defendant made no disclosure

regarding the use of the Meta Pixel on its website or the fact that 'guest information' was being disclosed to an unauthorized third party." Opp. at 15. As shown above, however, this is untrue. The 2021 Privacy Policy disclosed users' identifiers and purchase histories—which would be room bookings on the Motel 6 website—were shared with third parties who provided marketing services to Motel 6. ECF No. 29-1 at 6–7. Moreover, Plaintiff argues Meta used the information to target website visitors with advertising. ECF No. 24, ¶¶ 40, 46–48. Taking Plaintiff's allegations as true, Plaintiff would have seen at least one ad in the two years it took Plaintiff to file a complaint and would have been on inquiry notice then as well. *Saedi*, 2025 WL 1141168 at *10 ("Thus, even assuming that Plaintiff did not have inquiry notice at the exact moment she visited the Website, she surely had inquiry notice when she began seeing ads.").

## II. PLAINTIFF'S INTRUSION UPON SECLUSION CLAIM MUST BE DISMISSED

Having shown above that Plaintiff consented to the alleged activity when she agreed to the 2021 Privacy Policy when booking a room in 2022, and that Plaintiff's claims are barred by the statute of limitations, Motel 6 has shown Plaintiff's intrusion upon seclusion claim must also be dismissed. *Smith*, 262 F. Supp. at 955 ("Plaintiffs' consent also bars their common-law tort claims and their claim for invasion of privacy under the California Constitution) (citing Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.")).

## CONCLUSION

For the foregoing reasons, Motel 6 respectfully requests the Court dismiss Plaintiff's claims stated in the First Amended Complaint. As this is Plaintiff's second complaint and further amendments would not cure the deficiencies identified above, Motel 6 requests dismissal be with prejudice.

Dated: July 23, 2025

HUSCH BLACKWELL LLP

By: /s/ Dustin L. Taylor

Karen Luong (SBN 246809)
karen.luong@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand, Suite 2850
Los Angeles, CA 90071
213.337.6550 Telephone
213.337.6551 Fax

Dustin L. Taylor (admitted *pro hac vice*)
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
303.749.7200 Telephone
303.749.7272 Fax

***Attorneys for Defendant G6 Hospitality LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July 2025, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

*/s/ Dustin L. Taylor*