UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-02423-AH-(SHKx) | Date | August 18, 2025 |
| Title | *Cynthia Snyder v. G6 Hospitality LLC* | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 27)**

Before the Court is Defendant G6 Hospitality LLC's ("Defendant") Motion to Dismiss ("Motion") Plaintiff Cynthia Snyder's ("Plaintiff") First Amended Complaint ("FAC"). Mot., Dkt. No. 27. The matter is fully briefed and the Court held a hearing on August 13, 2025. For the reasons below, the Court GRANTS the Motion.

## I. BACKGROUND

Defendant is an economy motel chain that owns and operates a website which travelers use to book overnight stays at Motel 6 properties. FAC, Dkt. No. 24, ¶ 2. Plaintiff alleges that, unbeknownst to travelers, Defendant works with Meta, Inc. to intercept confidential communications sent by Plaintiff, including communications that contain sensitive and confidential travel information. *Id.* ¶ 4. On November 8, 2024, Plaintiff filed a class action complaint in this matter alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 et. seq., and invasion of privacy under California's Constitution. *See generally* Compl., Dkt. No. 1.

On February 27, 2025, Defendant filed a Motion to Compel Arbitration or, in the alternative, to dismiss. Mot. to Compel Arbitration, Dkt. No. 14. The Court issued an Order ("Order") denying the Motion to Compel Arbitration and dismissing Plaintiff's claims with leave to amend. Order, Dkt. No. 23. Plaintiff then filed the FAC on April 28, 2025. FAC, Dkt. No. 24. Defendant now brings the current Motion to Dismiss Plaintiff's FAC ("Motion"), filed on June 2, 2025 with an accompanying Memorandum in Support of the Motion. Mem., Dkt. No. 28. Plaintiff filed an Opposition on June 18, 2025. Opp'n, Dkt. No. 31. Defendant filed a Reply on July 23, 2025. Reply, Dkt. No. 36.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030−31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A court may consider the allegations contained in the pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and

amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

## III. DISCUSSION

Defendant argues that Plaintiff's FAC fails to state a claim under Rule 12(b)(6). Mem. at 6. Plaintiff alleges (1) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631 et. seq., and (2) invasion of privacy under California's Constitution. *See generally* FAC.

California Penal Code Section 631 "makes it unlawful for any person to use a 'machine, instrument, or contrivance' to 'intentionally tap[ ], or make[ ] any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument' or to read, attempt to read, or learn the 'contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable… without the consent of all parties to the communication.'" *McCoy v. Alphabet, Inc.,* 2021 WL 405816, at *13 (N.D. Cal. Feb. 2, 2021) (citing Cal. Penal Code Code § 631). "To state a claim for invasion of privacy under the California Constitution, a plaintiff must plead: (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is highly offensive." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021) (citing *Hernandez v. Hillsides, Inc*., 47 Cal.4th 272, 287 (2009)). Plaintiff claims that she has a legally protected privacy interest through California Civil Code § 53.5(a), which provides that an "owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a).

The Court had previously dismissed Plaintiff's claims because the Court found that Plaintiff had, through Defendant's privacy policy in place in 2024, consented to the conduct alleged in the original Complaint. *See generally* Order. In the FAC, Plaintiff now alleges that her first booking on Defendant's website occurred in 2022, and therefore a prior privacy policy applied which she did not agree to. FAC ¶ 7; Opp'n at 1. The policy in place in May 2022 ("Privacy Policy")

was last updated on November 1, 2021, and was in effect until July 1, 2024. Mem. at 5; Bhardwaj Decl. ¶ 11, Dkt. No. 29.

**A. Consent to the Privacy Policy**

As a preliminary matter, "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver*, 2021 WL 3191752, at *2; *see e.g., Garcia v. Enter Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("[d]efendants may properly challenge [p]laintiffs's allegations regarding lack of consent through the instant motion to dismiss"); *Smith v. Facebook, Inc.*, 745 F.App'x 8 (9th Cir. 2018) (affirming motion to dismiss based on consent).[1] Both of Plaintiff's causes of action depend on consent.

"In California, internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021)). Browsewrap agreements are those "in which an internet user accepts a website's terms of use merely by browsing the site." *Id.* "Courts have consistently held this type of agreement to be unenforceable, as individuals do not have inquiry notice." *Id.* (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014)). Clickwrap agreements require "users to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Id.* Courts routinely find clickwrap agreements enforceable. *Id.* Sign-in wrap agreements "[do] not require users to review the Terms of Service and confirm their assent prior to accessing the [services] as would be the case with a scrollwrap or clickwrap agreement. Instead, users are required to advance through a sign-in screen", for example, which states "By tapping 'Play,' I agree to the Terms of Service." *Id.*

An online contract may be enforceable "based on inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the

[1] Although Plaintiff argues generally that the issue regarding consent is a question of fact that cannot be determined at this stage, Plaintiff does not argue that there are any additional facts that would need to be considered at a later stage. Opp'n at 5. Moreover, Plaintiff proceeds to analyze the issue relying on a number of cases which determined the online contractual issue as a matter of law, not as a jury question. Opp'n at 6-10.

consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Keebaugh*, 100 F.4th at 1014 (analyzing sign-in wrap agreement) (quotation and citation omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (applying test to browsewrap agreement). "To be conspicuous, notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Keebaugh,* 100 F.4th at 1014. "While terms may be disclosed through hyperlinks, the presence of a hyperlink 'must be readily apparent,' and '[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists.'" *Id.* "In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018).

Here, the agreement resembles a clickwrap agreement, although the particular policy at issue is only accessible by clicking a separate link.[2] A user is

[2] *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) analyzed a website that "resembles something between clickwrap and browsewrap," but "most closely resembles a 'sign-in wrap agreement,'" because the website "provides a link to the Terms of Use but does not require that the user actually read them before moving on to purchase a subscription." There, the user was required to click a "continue" button on two screens and enter payment information on the third screen, with each screen containing language that by clicking, the user agrees to the Terms of Use and Privacy Policy. *Id*. at 1152-53; *see also Godun v. JustAnswer LLC*, 135 F.4th 699, 706, 708-09 (9th Cir. 2025) (analyzing webpage with a prechecked box agreeing to terms with a click button for "connect now" and noting that "a link to the Terms of Service was provided to Plaintiffs but they were not required to separately indicate that they had read or agree with those terms before using justanswer.com's services. Instead, they purportedly manifested agreement by signing up for or continuing to use justanswer.com. So we employ the inquiry-notice 'sign-in wrap' analytical framework."). Here, unlike those cases where the notice and purported agreement to the terms and conditions are separate from the button the user is clicking, the user must click on a box that expressly affirms that "I agree to … policies," before clicking on a separate button to confirm booking. Unlike in *Chabolla* and *Godun*, the user unambiguously manifests assent to the terms by clicking the box. The issue here is instead which terms are agreed upon. This is because, unlike a "pop-up

required to affirmatively check a box that states "I agree to rate and room policies of this reservation.*" before being able to confirm the booking, but the full list of terms is not detailed and is instead linked. Bhardwaj Decl. ¶¶ 7, 9. Plaintiff does not deny that she clicked this box. Plaintiff argues that she did not assent to the terms of Defendant's Privacy Policy because the Privacy Policy was not "reasonably conspicuous." Opp'n at 8. First, Plaintiff argues that language of the checkbox does not put users on notice that the privacy policy is included in the "rate and room policies." *Id.* at 9. Next, Plaintiff argues that the Privacy Policy is not immediately apparent because it is under a "PLEASE READ" label that must be expanded, and the Privacy Policy is contained in a hyperlink. Opp'n at 9.

The Court finds that Defendant's Privacy Policy was sufficiently conspicuous to bind a user to the terms and conditions within it. The affirmation users were required to check stated "I agree to rate and room policies of this reservation.*" Bhardwaj Decl. ¶ 9. The asterisk at the end of this affirmation corresponded to the "*Policies" section directly below the "Confirm Booking" button. *Id.* This list of policies included a drop-down menu titled in bold: "PLEASE READ: Privacy Policy and Reservation Policy, and California COVID-19 Notice." *Id.* Within this drop-down menu, the Privacy Policy could be accessed by clicking a hyperlink titled "View the Motel 6 Privacy Policy." *Id.* This hyperlink, while the same color as the surrounding font, was in a larger, bolded font, prefaced by the word "View", and the drop-down menu containing these hyperlinks was bolded and in close proximity to the operative buttons the user needed to press to advance with the reservation. *Id.* In addition, there is nothing else on the page, except for three other paragraphs entitled "Cancellation Policy," "Motel Policy Special Rate Notice – Valid ID," and "Total Cost," all against a white backdrop. Moreover, the context of the agreement was the confirmation of a hotel reservation for which a reasonable person would understand is based on a number of policies more than the few specific paragraphs listed between the "*Policies" and the "PLEASE READ" statements, including a "Reservation Policy," which was hyperlinked with the separately hyperlinked "Privacy Policy." The Court finds that this combination of features indicates to a reasonable person that by clicking the box agreeing to "rate and room policies," the user was agreeing to all policies including the "Privacy Policy." *See, e.g., Dean v. OKCoin USA Inc.*, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) ("Although the hyperlinked text through which Dean could have accessed OKCoin's Terms of Service was not

---

screen" which the user then accepts by clicking a box stating she agrees, here, the particular policy is hyperlinked. *Chabolla*, 129 F.4th at 1154.

presented in a different color from the other text, it was bolded in a manner unlike anything else on the sign-up page.").

Accordingly, when Plaintiff clicked the box affirmatively agreeing to the rate and room policies, she assented to all the policies in the "Policies" sections, including the Privacy Policy.

**B. The Privacy Policy Disclosures**

The parties dispute whether the Privacy Policy sufficiently discloses the conduct at issue. *See* Mem. at 5; Opp'n at 10. Plaintiff argues that, even if she agreed to the Privacy Policy, the terms within the Privacy Policy fail to disclose Defendant's alleged practices. Opp'n at 10. Specifically, Plaintiff argues that the Privacy Policy "does not disclose that guests' information is sent to third parties, such as Facebook, or that the information that is sent to third parties includes identifying information." *Id.*

The Privacy Policy, however, explains the disclosures Plaintiff is alleging. The Privacy Policy states that Defendant collects and discloses, for example:

- Name, Contact Info and other Identifiers: identifiers such as a real name, alias, address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, driver's license number, passport number, or other similar identifiers. Ex. A., Dkt. No. 29-1, at 7.
- Purchase History and Tendencies: commercial information including records of personal property, products or services purchased, obtained, or considered, or other purchasing or use histories or tendencies. *Id.*
- Usage Data: internet or other electronic network activity information, including, but not limited to, browsing history, clickstream data, search history, and information regarding a resident's interaction with an internet website, application, or advertisement, including access logs and other activity information related to your use of any company websites, applications or other online services. *Id.* at 8.

A reasonable Motel 6 user would have understood that Motel 6's data collection included the dates of the trip, number of guests, and username, which Plaintiff alleges each constitute a "guest record." The Privacy Policy specifies that personal information in the above categories is shared with third-party "Marketing" providers, which include "[b]usinesses that provide G6 with marketing and

advertising services including email communications."[3] *See id.* at 6-8. "Several courts have held that similar disclosures constitute adequate notice of tracking activity." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (citing cases)*; see also Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025).

Accordingly, Plaintiff consented to the Privacy Policy, which disclosed Defendant's alleged actions, and therefore "cannot state a claim under the California Invasion of Privacy Act because that statute imposes liability only for interception 'without the consent of all parties.'" *Smith v. Facebook, Inc.*, 262 F.

---

[3] Plaintiff also argues that the Privacy Policy states that (1) cookies do not collect information apart from what a user voluntarily provides, but guests do not voluntarily provide their Facebook ID; (2) third-party media plug-ins can be activated manually, so a reasonable user would not think their Facebook ID is being collected when these features are not manually activated; and (3) Defendant does not sell users' personal information. Opp'n at 11-13. However, in the "Collection, Use & Disclosures" section, the Privacy Policy states that "[i]n connection with our business and goals above, we may disclose your personal information to other parties." *See* Ex. A, Dkt. No. 29-1, at 2. It further discloses under a subheading entitled "Targeted Advertising" that "[w]e may work with other companies to show you advertisements we think you may find relevant and useful. This may include advertisements displayed on our own Site, or advertisements from us displayed on other companies' websites or apps. The advertisements you see may be based on information collected by us or third parties and/or may be based on your activities on our Site or third-party websites." *Id.* at 3. And in the "How We Collect and Use Personal Information" section, the Privacy Policy identifies the categories of personal information, which includes the personal information at issue here, and then lists the "categories of third parties with whom we share personal information," including "marketing." *Id.* at 6. Plaintiff is therefore incorrect in the assertion that "she would have no way of knowing that her protected 'guest record' information was being disclosed to third parties in violation of California law, as Defendant represented that no personal data, let alone 'guest record' information was being sold or shared." Opp'n at 13. Defendant demonstrates that there is only one plausible interpretation here regarding what is shared and with whom, and the FAC does not allege that Plaintiff's so-called "guest records" were sold. *See* FAC ¶¶ 29-30 (alleging that Meta sells advertising space). Plaintiff's arguments about the "Third-Party Media" section relate to arguments regarding conduct by third parties like Facebook (now Meta), but not about the specific allegations here regarding Motel 6.

Supp. 3d at 955 (citing Cal. Penal Code § 631(a)). "Plaintiffs' consent also bars… their claim for invasion of privacy under the California Constitution." *Id.*; *see* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it.").

Furthermore, Plaintiff has alleged no new facts to clarify the disagreement regarding whether the information Plaintiff alleges is a "guest record" under California Civil Code § 53.5.[4] Plaintiff alleges that the "dates of the trip, number of guests, username, etc., constituted guest records under California Civil Code § 53.5." Compl. ¶ 95. Throughout the Opposition, Plaintiff refers generally to "guest record" information, but does not define what this information consists of or explain what, if any, constitutes information such as a "name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number" as provided by the statute. Cal. Civ. Code § 53.5(c).

Nonetheless, the Court finds that Plaintiff, through Defendant's Privacy Policy, consented to the allegations as currently pled by the FAC. Accordingly, the Court DISMISSES both of Plaintiff's claims.

In Plaintiff's Opposition, Plaintiff states merely that in the alternative, Plaintiff "should be given leave to amend." Opp'n at 17. But no explanation is given regarding how Plaintiff would amend a second time to properly state a claim. As Plaintiff has already been granted leave to amend and has failed to cure the deficiencies, the Court concludes that further amendment would be futile.

## IV. CONCLUSION

For the forgoing reasons the Court GRANTS Defendant's Motion to Dismiss without leave to amend.

**IT IS SO ORDERED.**

---

[4] California Civil Code § 53.5 defines a "[g]uest record" as "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c).